IN IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WEIHARIK GARCIA, individually and on behalf of all others similarly situated,** | **Case No. 24-4823** |
| ***Plaintiff,*** | **CLASS ACTION** |
| ***v.*** | **JURY TRIAL DEMANDED** |
| **STAR POWER MARKETING GROUP, LLC,** | |
| ***Defendant.*** | |

## MOTION FOR AND MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

This case is the touchstone of the unlawful marketing efforts Congress sought to curtail when it passed the Telephone Consumer Protection Act (TCPA) in 1991. *See, e.g.*, 137 CONG. REC. 30, 821 (1991) (statement of Sen. Fritz Hollings describing telemarketing calls as "the scourge of modern civilization"). The TCPA created, among other regulations, the National Do Not Call Registry (DNC). DNC compliance is, in theory, quite simple. Do Not Call means precisely that: Do Not Call. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). Plaintiff's analysis, which goes entirely unrebutted and uncontested, confirms that Defendant called Plaintiff and 2,891 other class members whose numbers were on the Do Not Call list, and Plaintiff and 6,674 other Pennsylvania class members without registering as telemarketers under Pennsylvania law anyway as part of the text messaging campaign at issue here. (Exhibit 1, Declaration of Andrew Roman Perrong).

Notably, Star Power has *not* hired an expert to refute this analysis. In fact, it hasn't propounded *any* discovery on the Plaintiff, which makes this particular TCPA class certification motion, generally a battle of the experts, unique. Plaintiff seeks to certify a class of these individuals who Defendant Star Power Marketing Group, LLC texted without consent, despite their numbers being on the Do Not Call Registry. Discovery in this matter has further revealed no evidence of consent because Defendant did not respond to any of the Plaintiff's requests for production seeking evidence of the same. Moreover, Defendant filed untimely responses to the Plaintiff's requests for admission, which included, among other things, admissions for "all allegations, factual and legal, in Plaintiff's complaint," to admit that it does not have a do not call list or policy, and that it sent the calls complained of. Accordingly, the uncontroverted evidence in this case has revealed no defenses and third party discovery has revealed *prima facie* violations of the TCPA, rendering class certification appropriate. This class, with unrefuted evidence offered by the plaintiff, should be certified.

Among other enforcement mechanisms, the TCPA allows a private right of action for violations of the Do-Not-Call registry. *See Krakauer*, 925 F.3d at 649 (citing 47 U.S.C. § 227(c)(5)). In *Krakauer*, the Fourth Circuit observed that "[t]he private cause of action in § 227(c)(5) offers many advantages for class-wide adjudication" because, among other things, "the liability determinations involve no questions of individual reliance . . . [and] the damages calculations do not turn on individual evidence." *Id.* at 655–56 (citations omitted). As a result, and particularly "[g]iven the remedial purpose of the TCPA," it was "no surprise" to the Fourth Circuit that the cause of action in *Krakauer* "was conducive to class-wide disposition." *Id.*; *accord Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (noting that "[c]lass

certification is normal [in TCPA cases] . . . because the main questions . . . are common to all recipients.").

So too here. Just as in *Krakauer*, the common questions that arise in this case predominate for the proposed class. All putative class members received illegal telemarketing calls from Star Power even though they were listed on the Do-Not-Call Registry. The data analysis issues in this case are likewise streamlined: Star Power sent the messages itself, as confirmed through third party discovery, and the class has already been ascertained from the data obtained through third party discovery. All class members received functionally identical marketing text messages arising from Star Power's telemarketing campaign to advertise its events, and the damages sought by Plaintiff and class members under the TCPA are set by statute. Resolving the thousands of TCPA claims present here is undoubtedly the superior method for addressing Star Power's systematic TCPA violations, given the inefficiency of what might otherwise be numerous identical lawsuits, or none at all.

And this case also poses no individualized issues. Defendant does not contend, and has not produced any evidence showing, that it obtained consent to contact the Plaintiff and other class members. At bottom, adjudication of the claims and defenses here can be accomplished on a classwide basis. Many class members would otherwise forfeit their claims due to the high cost of suing individually under the TCPA, since the $405 filing fee would negate most of the potential statutory damages. *See Krakauer*, 925 F.3d at 656 ("In enacting the [TCPA] Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications."). Thus, class-wide

liability is the only way to ensure that corporations such as Star Power stop systematically violating the law and compensate those who were injured.

## PROPOSED CLASS

For the reasons that follow, the Plaintiff respectfully requests that this Court certify the classes as follows under Fed. R. Civ. P. 23(b)(3), and for corresponding injunctive relief under Rule 23(b)(2):

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Star Power's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Pennsylvania Telemarketer Registration Act Class:** All persons in the Commonwealth of Pennsylvania, as determined through their area codes, who (1) received a telephone call from or on behalf of Defendant, (2) at any time during which Defendant was acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General, (3) at any time in the period that begins two years before the date of filing this Complaint to trial.

As explained above, there are 2,892 such putative class members in the first class and 6,675 such putative class members in the second. Star Power has not disputed the Plaintiff's analysis with one of its own, nor has it produced any evidence of any affirmative defenses to either of these two claims, in addition to failing to plead such defenses as an initial matter.

## RELEVANT LAW

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that Americans were "outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, §§ 2(5)–(6) (1991) (codified at 47 U.S.C. § 227). Perhaps the most well-known aspect of the TCPA was the creation of the Do-Not-Call Registry (DNC Registry) to provide a safe haven

4

from unwanted marketing calls. By adding a telephone number to the Registry, consumers indicate they don't want telemarketing calls. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and its implementing regulations prohibit calling residential telephone subscribers on the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.").

The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12–month period by or on behalf of the same entity in violation of the [TCPA] regulations." 47 U.S.C. § 227(c)(5). As the Fourth Circuit recognized in *Krakauer*, the TCPA's "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to "make TCPA claims amenable to class action resolution." 925 F.3d at 663.

Recognizing the particular harm that telemarketers' failure to register under Pennsylvania law poses to Pennsylvania residents, the General Assembly passed the Pennsylvania Telemarketer Registration Act. It is a violation of the Act to place a telephone solicitation call, as a "telemarketer," to a Pennsylvania resident without first registering as a telemarketer with the Office of the Attorney General. 73 PA. CONS. STAT § 2243. Violations of the Act are violations of Pennsylvania's Unfair Trade Practices and Consumer Protection Law, which provides for statutory damages of $100, which can be up to trebled for each violation, in addition to providing an award of attorneys' fees and costs.

**ARGUMENT**

A. <u>**This case satisfies the requirements of Rule 23(a).**</u>

A plaintiff seeking class certification must demonstrate he has satisfied the four threshold requirements of Rule 23(a). *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). In addition, a plaintiff must satisfy one of the three parts of Rule 23(b). *Id.* This case satisfies the requirements of Rule 23(a)(1) (2), (3), and (4) because numerosity, commonality, typicality, and adequacy are met.

The Court's inquiry at the class certification stage centers upon whether Plaintiff has demonstrated that she meets the requirements of Rule 23, not whether Plaintiff will ultimately prevail on the merits. *See Amgen v. Connecticut Ret. Plans*, 568 U.S. 455, 465-66 (2013). Few actions are as appropriate for class treatment as this one, as the Plaintiff asserts uniform claims for relief against thousands of ascertained parties over tens of thousands of ascertained violations. The Defendant's own telephone records show that the Defendant engaged in the same course of conduct across the Classes. This Court should certify this class action because Plaintiff's claims involve a core, common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

1. The numerosity requirement of Rule 23(a)(1) is satisfied because calling records <u>identify 2,892 class members in the first class and 6,675 in the second.</u>

The numerosity requirement is easily satisfied here. For a proposed class to pass muster under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). And impracticability does not equate to impossibility; the Rule merely requires that, in the absence of a class action, joinder would be "simply difficult or inconvenient." *Russo v. CVS Pharm., Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001). "No

minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001).

Here, Plaintiff's counsel has scrubbed the telephone numbers against the National Do Not Call Registry and run a data analysis to identify those telephone numbers contacted bearing Pennsylvania area codes. Those analyses have identified 2,892 class members in the Do Not Call Registry class, and 6,675 class members in the Pennsylvania Telemarketer Registration Act classes, respectively. It would be impractical to join all those persons to assert such relatively insignificant claims. For these reasons, this case satisfies the numerosity requirement.

2. The commonality requirement of Rule 23(a)(2) is satisfied because all class members suffered the same injuries–illegal telemarketing or unregistered telemarketing–and have common contentions–that Defendant's calls to their numbers violated the law.

The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identify of questions of law or fact. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (holding that claims based on a common course of conduct will satisfy commonality). Indeed, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359. The Plaintiff must only demonstrate that there is a common question central to the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case satisfies the requirement.

Commonality is satisfied here because each Class suffered a common injury. The NDNC class was injured in that Defendant sent text message calls to their numbers on the National Do Not Call Registry without consent. And the PTRA class was injured in that Defendant sent text message calls to their telephone numbers without registering as a telemarketer, as Defendant is

7

required to do under Pennsylvania law. *See Wal-Mart*, 564 U.S. at 349. Each Class's claims depends on a common question capable of classwide resolution: whether the Defendant's conduct of texting telephone numbers on the Do Not Call Registry constitutes a violation of the TCPA, and whether the Defendant's conduct of texting Pennsylvania telephone numbers without registration constitutes a violation of the PTRA. The answer to each question in each Class will apply to all class members. The Court can resolve this case using common proof, such as the admissions that have been deemed admitted and third-party discovery already produced. The answer will also rely on uniform legal analysis of each statute and the lack of any evidence, after discovery, supporting Defendant's affirmative defenses, of which Defendant has pled none.

Also capable of classwide resolution will be the related questions of whether Defendant initiated calls without obtaining the requisite prior express written consent. So too would be the question of whether the Defendant directed calls to be made without having any training, internal do not call policy, or do not call lists as required by law. And, once all this is proven, the Court will be able to determine whether the Plaintiff and other class members are entitled to injunctive relief based on the answers to the aforementioned questions.

There are few cases that pose common questions, the answers to which are as uniform as the one here. In determining whether such conduct is sufficient to impose direct liability for TCPA violations, this Court, and the Jury, need only look to the text messages produced in discovery and Defendant's own lack of any evidence for any affirmative defense and explicit failure to plead the same. And there is no evidence for any potentially individualized issue, including that of consent, that so often poses a barrier to TCPA class certification. *See Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (granting summary judgment to plaintiff when defendant adduced no evidence of consent). Moreover, because all the telephone

records here originated from the same third-party source, the success and legal sufficiency of the underlying claims is necessarily a common question with common answers.

And beyond sharing the same legal and factual questions, the TCPA is a statute uniquely suited to classwide adjudication. As compared to other causes of action where class actions are routinely certified in consumer protection contexts, TCPA cases involve a singular legal question based on a singular set of records, as here. *See, e.g.*, *Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases).

3. The typicality requirement of Rule 23(a)(3) is satisfied because all class members received nearly identical text message calls from Defendant.

Typicality demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Like commonality, the burden for demonstrating typicality is quite low and merely requires that "the named plaintiffs' individual circumstances are [not] markedly different." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001). Put another way, the "legal theory upon which the claims are based" should not "differ from that upon which the claims of other class members will be based." *Id.* Importantly, typicality does not require that the Plaintiff's claims be identical to other class members, only that they arise from a common, typical course of events and conduct that gives rise to each class member's similar legal arguments to prove the defendant's liability. *Id.* at 184. Indeed, the Third Circuit, like other circuits, has held that typicality tends to merge with the commonality analysis. *Id.* at 186.

"The typicality criterion is intended to preclude certification of those cases where the legal theories of the named plaintiffs potentially conflict with those of the absentees by requiring that the common claims are comparably central to the claims of the named plaintiffs as to the

claims of the absentees." *Baby Neal*, 43 F.3d at 57. It is important to note that typicality is still present even when (unlike here) there exist factual differences among class members' claims (such as the specific text messages marketing each event), because the *cause* of their injuries nevertheless remains typical throughout the class. *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 312 (3d Cir. 1998). As the Third Circuit has noted, the inability of a class representative to prove every other class member's claim does not result in a failure of the typicality requirement, so long as the class representative can point to a typical cause of their injury that is shared by other class members. *Newton*, 259 F.3d at 185. Put another way, typicality refers to the *nature* or *cause* of the class representative's claim, not the specific facts from which the claim arose.

Plaintiff, and all class members, received text messages calls from Defendant. Each text message was sent advertising an event, for example, a Super Bowl party, an Eagles Victory Party, and a comedy tour. Each member of the DNC class received the text messages to their numbers on the National Do Not Cal Registry without consent. And each member of the PTRA class received the text messages to their Pennsylvania cell phone numbers without Defendant registering as a telemarketer under that statute. Therefore, Ms. Garcia and all class members have been harmed through an identical course of conduct, and Ms. Garcia's legal theories are based on the same legal theories of each class. And Ms. Garcia's experience is identical to those of other class members: she received unsolicited text message calls to her Pennsylvania telephone number on the National Do Not Call Registry without consent. This identical course of conduct gives rise to the Class's claims. Every class member has the same claims, so by Plaintiff proving her claims, she will prove the class claims. *See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (certifying

a TCPA case and finding that "[t]he 'typicality' requirement is met as the legal theory for each class member is based on the same facts and legal theory as [plaintiff]"). No individualized inquiry is required.

Indeed, courts routinely certify as typical TCPA cases where, like here, the same defendant and circumstances caused the calls at issue. *See, e.g.*, *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 569 (W.D. Wash. 2012); *Bee, Denning, Inc. v. Cap. All. Grp.*, 310 F.R.D. 614, 626 (S.D. Cal. 2015). Courts also do not see potential consent issues, even when they exist, unlike here, as destroying typicality, particularly when, as here, the purported customer denies having consented and where Defendant has proffered no consent evidence. *Hossfeld*, 726 F. Supp. 3d 873; *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 972 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). And, as explained above, even *if* consent was an issue, which it is not, the fact that Defendant sent messages and the resulting injuries are unquestionably common to call class members. The fact that the text messages at issue here were all sent from the Defendant's account with SlickText, as proven through their records, is a common business practice practices dictated by the Defendant further establishes typicality. For the foregoing reasons, this case satisfies the typicality requirement.

    4.   The adequacy requirement of Rule 23(a)(4) is satisfied because Ms. Garcia is an ideal <u>TCPA class representative and TCPA-experienced counsel represents her.</u>

The adequacy requirement necessitates a two-part analysis. First, the Plaintiff must demonstrate that she can represent the class "fairly and adequately" and protect its interests. FED. R. CIV. P. 23(a)(4). Additionally, the Plaintiff must also demonstrate that her chosen counsel will do the same. With respect to both herself and counsel, Plaintiff must demonstrate that they are credible and have adequate knowledge of and activity in the case. *Baffa v. Donaldson, Lufkin, &*

*Jennette Secs. Corp.*, 222 F.3d 52, 61-62 (2d Cir. 2000). Additionally, the Plaintiff must also demonstrate that neither she nor counsel have a conflict of interest between herself and class members. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 625 (1997).

Plaintiff is your typical adequate class representative. She is an ordinary, well-meaning consumer who is fed up with the text message calls at issue. And although she has no formal legal training or experience, she is familiar with the nature of the litigation, the claims at issue, and what is required of her as a class representative. *See* Exhibit 2, Declaration of Weiharik Garcia. There is no doubt that Ms. Garcia can and will adequately represent this class.

In addition to representing Ms. Garcia in this matter, Mr. Perrong also represented the class in *Aley v. Lightfire Network, LLC*, including on an unsuccessful interlocutory appeal taken by the defendant, in that case. 2024 WL 4007345; No. 24-2539, (2d Cir. Jan. 8, 2025) (denying interlocutory review). Mr. Perrong has further been co-counsel for other class actions that have been certified and settled. Mr. Perrong has the necessary expertise in class action litigation to represent the Class. Thus, adequacy is satisfied.

**B.   This case satisfies the requirements of Rule 23(b).**

Of course, in addition to satisfying the requirements of Rule 23(a), the Plaintiff must also demonstrate that she has satisfied the requirements of at least one of the three subsections of Rule 23(b). Here, class certification is appropriate under Rule 23(b)(2) and (3); under Rule 23(b)(2) because the Defendant has failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate …." FED. R. CIV. P. 23(b)(2), and under Rule 23(b)(3), because common questions of law or fact "predomin[ate]" and because the class action mechanism is "superior" to the other available methods to adjudicate the controversy.

1. <u>This case satisfies the requirements of Rule 23(b)(2).</u>

"[T]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted.'" *Wal-Mart*, 564 U.S. at 360. Here, class certification is appropriate under Rule 23(b)(2) because, in failing to scrub numbers against the Do Not Call list, and failing to register as a telemarketer as required by law, Defendant violated two separate statutes which expressly provide for injunctive relief, which require Defendant (1) to scrub numbers against the Do Not Call Registry and (2) to register as a telemarketer as required under Pennsylvania law. Plaintiff and the Classes are further entitled to declaratory relief holding that violations of the same statutes occurred. The Defendant also failed to act on grounds generally applicable to the class, as described, such that final injunctive relief is warranted.

Of note, the TCPA specifically provides for injunctive relief. 47 U.S.C. § 227(b)(3), (c)(5). The TCPA caselaw is rife with examples of courts certifying Rule 23(b)(2) classes for injunctive relief. For example, in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012), the Ninth Circuit upheld certification of a Rule 23(b)(2) class in granting a *preliminary* injunction in prohibiting a debt collector's use of an illegal automatic dialer. Similarly, in *West v. California Servs. Bureau, Inc.*, 323 F.R.D. 295, 299 (N.D. Cal. 2017), the court granted an injunctive relief class to enjoin defendant from calling wrong numbers using specified equipment. And in *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 649 (W.D. Wash. 2007), the district court certified a 23(b)(2) class, despite the defendant's promise that "it will not send unsolicited facsimiles again." The *Kavu* Court flatly rejected this argument, reasoning that the defendant "did not make that promise before plaintiff filed this lawsuit, and plaintiff is not required to take defendant at its word." *Id.* Pennsylvania's Unfair Trade Practices and Consumer Protection Law, which the Telemarketer Registration Act expressly makes violations of the same actionable thereunder, similarly provides for injunctive relief. 73 Pa. Cons. Stat. §201-9.2.

Further citations abound demonstrating the particular appropriateness of Rule 23(b)(2)

certification in cases like these, where the Defendant continues a course of TCPA violative

conduct. In *Wendell H. Stone Co. v. Five Star Advert., LLC*, the District of Colorado explained:

> In this case, certification is necessary because there is no assurance that an injunction
> against defendants preventing them from faxing Wendell Stone Company would prevent
> defendants from sending unsolicited faxes to other companies or persons. While the
> injunctive relief sought is quite close to an impermissible injunction to obey the law, 47
> U.S.C. § 227(b)(3) creates a private right of action to bring an action to enjoin a violation
> of the TCPA. 47 U.S.C. § 227(b)(3)(A). . . . The Court finds that the class is sufficiently
> cohesive for a classwide injunctive relief and tailoring to each class member is
> unnecessary. Accordingly, the Court finds that certification under Rule 23(b)(2) is
> appropriate.

No. 19-cv-03157-PAB-STV, 2021 U.S. Dist. LEXIS 50721, at *15-18 (D. Colo. Mar. 17, 2021)

(cleaned up); *see also Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:10-cv-1777 AJB

(NLS), 2012 U.S. Dist. LEXIS 125390, at *17-18 (S.D. Cal. Aug. 27, 2012) ("The undersigned

finds that preliminary certification of the class under Rule 23(b)(2) is proper for at least 2

reasons. First, the TCPA provides injunctive relief and Plaintiff seeks injunctive relief in his

complaint. Second, the agreed-upon injunctive relief will redress an alleged group-wide injury,

i.e., additional training and implementation of new policies.")

Here, injunctive relief, which would include, among other relief, (1) ordering Defendant

to take measures to avoid calling numbers on the Do Not Call Registry without consent, (2)

establishing an internal do not call list, and establishing an internal do not call policy, (3)

registering as telemarketers under Pennsylvania state law, and (4) requiring Defendant to

maintain compliance counsel and a telemarketing compliance company as a condition of their

continued ability to place telemarketing calls, are all necessary to address the broad, classwide

injury that the class has experienced and continues to experience, despite this lawsuit.

This federal class action did not put an end to each Class's injuries, who continue to

suffer damages so long as Defendant continues to send text messages to numbers on the Do Not

Call Registry without consent and without registering as a telemarketer under Pennsylvania law.

A court order certifying the class and eventually awarding injunctive relief is the only way to

bring the Defendant into compliance with the TCPA and PTRA. And such measures would

ultimately broadly benefit the class and general public, rendering certification under Rule

23(b)(2) appropriate.

    2.   Both common legal and factual questions predominate over the litigation because there is uniform proof for uniform calling conduct to the Class, satisfying the first part of Rule <u>23(b)(3).</u>

This simple, straightforward case is the touchstone for satisfying the predominance

requirement because the "proposed class [is] sufficiently cohesive to warrant adjudication by

representation." *Amchem*, 521 U.S. at 623-24. The purpose of the predominance requirement is

to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by

representation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), as

amended (Jan. 16, 2009). It seeks to "ensure[ ] that the class will be certified only when it would

'achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to

persons similarly situated, without sacrificing procedural fairness or bringing about other

undesirable results.'" *Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91,

104 (2d Cir. 2007) (quoting *Amchem*, 521 U.S. at 615).

    The predominance requirement merely requires the plaintiff to show that the elements of

the underlying cause of action are subject to classwide proof arising from common conduct. In

other words, the predominance requirement seeks to determine whether resolution of some of the

legal or factual questions that qualify each class member's case as a genuine controversy can be

achieved through generalized proof, and if these particular issues, when viewed through that

prism, are more substantial than the issues subject only to individualized proof. *Rupert v. Range*

*Res. - Appalachia, LLC*, No. 2:21-CV-1281, 2024 WL 4349222, at *10 (W.D. Pa. Sept. 30, 2024).

Here, the common, "aggregation-enabling issues in the case," such as the lists of persons called, whether they were on the DNC, and whether the TCPA's other statutory prerequisites are satisfied, are more prevalent than "non-common aggregation-defeating individual issues," of which none exist. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). For example, though putative consent is an affirmative defense that *may be* an aggregation-defeating issue, *see Hirsch v. UsHealth Advisors, LLC*, 337 F.R.D. 118, 130 (N.D. Tex. 2020), Defendant has adduced *no evidence* sufficient to satisfy its affirmative defense, and discovery has now closed. Indeed, it has admitted that it possessed no consent to contact Plaintiff or any other class member. Not only that Defendant has pled *no* affirmative defenses in its Answer, and thus has waived them. FED R. CIV. P. 8(c); *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991) (holding that failure to assert an affirmative defense results in its waiver). Given that Defendant has adduced no affirmative defenses, the only issues here are those of the affirmative class case, and those questions can be answered on a class basis. For this reason, there is no affirmative defense whatsoever that would constitute an aggregation-defeating individual issue.

There exists uniform calling conduct and a uniform set data that all class members can use to make a *prima facie* showing of their TCPA and PTRA claims. Furthermore, as outlined above, these factual commonalities are uniquely subject to classwide analysis and adjudication. Courts routinely certify TCPA and other consumer claims because the same calling conduct applies to the class and the class can prove those claims through objective evidence on a classwide basis. *See, e.g.*, *Krakauer*, 311 F.R.D. at 394–95 (certifying a TCPA case and noting that common questions in TCPA class action relating to calls made to consumers on the Do-Not-

Call Registry predominates over individual questions), *aff'd,* 925 F.3d at 655–57 (affirming

certification and noting that the many common questions of law and issues of fact predominate

over individual issues); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (holding

predominance was satisfied); *Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016

WL 7179298, at *7 (N.D. Ind. Dec. 9, 2016) (holding that predominance was satisfied when data

was obtained in a uniform, common manner). As explained above, this case is particularly

unique, as there are no defenses left for the Court to adjudicate.

      And here, common issues related to the Plaintiff's burden of proof overwhelmingly

predominate and these issues are subject to common legal and factual proof. First, whether Star

Power contacted the Plaintiff and other class members who listed their numbers on the DNC

Registry is subject to common proof in the form of Star Power's own calling records as well as

records of the DNC Registry, as have already been examined. Second, whether the other

statutory prerequisites to this claim, such as the one that the "individual receive more than one

telephone call within any 12-month period," are likewise proved by those same calling records.

47 U.S.C. § 227(c)(5). Third, the Pennsylvania Telemarketing Registration Act claims are

similarly subject to classwide, uniform proof of whether Defendant was appropriately registered.

This Court need not conduct individualized damage assessments because all class members are

seeking the same measure of statutory damages. Courts routinely certify class actions in cases,

such as this one, where all major issues can "be shown through aggregate records," thus

eliminating the need for "individual fact-finding." *E.g.*, *Krakauer*, 925 F.3d at 658.

    3.  <u>A class action is clearly the "superior" method of adjudicating claims under the TCPA.</u>

      The four factors of the superiority requirement set forth in Rule 23(b)(3), which requires

that the class action mechanism be "superior" to other available methods to adjudicate the

controversy, are also satisfied. The guiding policy behind the class action mechanism is to overcome problems posed by the miniscule incentive that small recoveries pose. *Amchem*, 521 U.S. at 616. This case is the touchstone for why a class action is superior to individual actions.

*First*, if this Court denied certification, few members of each Class would have an interest in bringing an individual claim against Defendant seeking to recover a relatively miniscule amount of between $500 and $1,500 per call for the TCPA claims and of between $100 and $300 for the PTRA claims, and likely do not have the necessary legal resources to do so, particularly when considering the niche area of law that this case presents. The TCPA has no attorney fee hook. Star Power contacted many Class members who did not know anything about their TCPA rights, let alone how to begin enforcing them. Even fewer individuals would pay $405 to file this case, only to potentially recover $500. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 (2012). As a result, the class action mechanism is clearly superior to individual litigation, thus satisfying superiority. *See* William B. Rubenstein, 2 *Newberg on Class Actions* § 4:87 (5th ed.) (noting superiority requirement is met in class actions involving small claims because "[i]n such cases, there will either be a class action or there will be no litigation").

*Second*, Plaintiff is not aware of any other such actions against Defendant alleging TCPA violations. The Plaintiff so far is the first and only individual to hold Star Power accountable for its unlawful telemarketing conduct through the filing of a lawsuit. *Third*, class treatment will conserve judicial resources here in the Eastern District of Pennsylvania, will promote consistency, and will efficiently adjudicate the dispute, as opposed to the alternative of hundreds of individual cases filed by individuals or informally demanding TCPA and PTRA damages from the Defendant, which the Defendant has refused to satisfy. Therefore, adjudicating these

claims here would provide flexibility, consistency, and control not available with individual litigation. *Krakauer*, 311 F.R.D. at 400.

*Finally*, consumer class litigation involving such straightforward claims is easily manageable, even at trial, and would only be litigated a single time, as this Court has done many times before. As in other TCPA and related state law cases, the Plaintiff can and has proved the TCPA and state law violations alleged here through her counsel's analysis of the calling records from SlickText. Additional evidence will only involve a handful of witnesses with knowledge as to Star Power's marketing conduct and practices.

The class action mechanism effectuates the important social and cultural goals underlying the TCPA. The statute was designed from the ground-up to create a simple scheme for determining violations, adjudicating a limited number of defenses, and making victims whole using statutory damages. *Krakauer*, 925 F.3d at 659. The Fourth Circuit observed that "the advantages of class resolution follow directly from the statute," which "creates a simple scheme" for resolving the problem of "repeated and unwanted telemarketing calls." *Id.* at 659, 663. Congress prescribed strong medicine for a serious disease. This resounding endorsement of TCPA class actions leaves no room for doubt as to the fact that this case must be certified and that the class action mechanism is superior.

## CONCLUSION

Because the Plaintiff has satisfied Rule 23's admittedly deferential requirements, Plaintiff respectfully requests that this Court (1) certify the proposed Class, (2) appoint Ms. Garcia to serve as the Class Representative, and (3) appoint Perrong Law LLC, as Class Counsel.

Dated: November 24, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

November 24, 2025

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.