IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WEIHARIK GARCIA,                    :
*individually and on behalf of all*    :
*others similarly situated*            :            CIVIL ACTION
                                    :
                                    :
v.                                  :            NO. 24-4823
                                    :
STAR POWER MARKETING               :
GROUP, LLC                          :
                                    :

**MEMORANDUM OPINION**

**Henry, J.**                                              **June 24, 2026**

Pending before the Court is Plaintiff Weiharik Garcia's Motion for Class Certification (ECF No. 17) ("Mot.") in this case brought pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") and the Pennsylvania Telemarketer Registration Act, 73 Pa. Const. Stat. § 2243 (the "PTRA"). For the following reasons, Plaintiff's Motion is denied without prejudice.

## I.    BACKGROUND

Plaintiff brought suit individually and on behalf of other putative class members against Defendant Star Power Marketing Group ("Star Power" or "Defendant") on September 12, 2024, alleging that Star Power "violated the TCPA by making telemarketing calls to Plaintiff and other putative class members listed on the National Do Not Call Registry without their written consent." *See* ECF No. 1 ("Compl.") at ¶ 3. Specifically, Plaintiff alleges that her telephone number is listed on the National Do Not Call Registry but, nevertheless, she has received at least five text messages from Star Power marketing soliciting her to attend events associated with Star Power. *Id.* at ¶¶ 19, 21. Plaintiff additionally alleges that Defendant violated the PTRA by making calls as a

1

telemarketer despite not being registered with the Pennsylvania Office of Attorney General at least thirty days prior to making the calls at issue.  *Id.* at ¶ 51.

Plaintiff purports to bring this class action on behalf of herself and the following classes:

> **National DNC Class**: All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Star Power's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Pennsylvania Telemarketer Registration Act Class**: All persons in the Commonwealth of Pennsylvania, as determined through their area codes, who (1) received a telephone call from or on behalf of Defendant, (2) at any time during which Defendant was acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General, (3) at any time in the period that begins two years before the date of filing this Complaint to trial.

*Id.* at ¶ 37; Mot. at 4.[1]

Default was entered against Star Power on October 10, 2024 after Star Power failed to plead or otherwise defend the action.  *See* ECF No. 5.  The case was reassigned to me on January 10, 2025, and shortly thereafter, the parties consented to set aside Star Power's default.  *See* ECF Nos. 9, 10. Star Power answered the Complaint on January 16, 2025, averring that Plaintiff's number had been opted in to receiving messages from Star Power prior to June of 2024.  *See* ECF No. 11 ("Ans.") at ¶ 35.  Star Power "denied that there could be a class of persons aggrieved under the TCPA after voluntarily 'opting in' to a text database with option of removing themselves by texting stop."  *Id.* at ¶ 38.  Plaintiff filed her Motion for Class Certification on November 24, 2025, to which Star Power did not respond.

---

[1] The Motion's proposed PTRA class includes additional language that does not appear in the Complaint's description of the proposed class: "as determined through their area codes." The Court will refer to the proposed class as it appears in the Motion, not as it appears in the Complaint.

## II.   STANDARD OF LAW

The Motion is before the Court without any opposition from Star Power, but "[e]ven when unopposed, a motion for class certification must be evaluated on the merits." *Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 539 (E.D. Pa. 2019) (quoting *Douglin v. GreatBanc Tr. Co.*, 115 F. Supp. 3d 404, 409 (S.D.N.Y. 2015)). "Class certification is proper only 'if the trial court is satisfied, after a rigorous analysis, that the prerequisites' of Rule 23 are met." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 (3d Cir. 2008) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982)).

Federal Rule of Civil Procedure 23 sets forth the requirements for class certification. Pursuant to Rule 23(a), every putative class action must satisfy prerequisites of numerosity, commonality, typicality, and adequacy. *See* Fed. R. Civ. P. 23(a). Additionally, at least one requirement must be met from Rule 23(b). *See Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 55-56 (3d Cir. 1994). The burden of demonstrating that all requirements for class certification are met rests with the party proposing class certification. *Id.* at 55.

## III.   DISCUSSION

### a.  Plaintiff's Declaration

As an initial matter, the Court wishes to briefly address Plaintiff's Declaration, which is attached as an exhibit to her Motion. *See* ECF No. 17-3. The Declaration is unsigned, leaving a question as to whether the Court should consider it in its analysis. *See, e.g.*, *Patchen v. McGuire*, No. 11-cv-5388, 2012 WL 4473233, at *12 n.20 (E.D. Pa. Sept. 27, 2012) ("The evidentiary value of this declaration is drastically reduced because it is unsigned."); *Bastista v. U.S. Dep't. of Just.*, 129 F. App'x 724, 725 (3d Cir. 2005) ("We will not consider the unsigned declaration that the Government submitted to show that [the defendant] failed to exhaust his administrative remedies.").

Because I am denying this Motion without prejudice, Plaintiff will have an opportunity to re-file a signed declaration. It would behoove her to do so.

### b. **The National DNC Class**

As previously noted, Plaintiff seeks to certify the following class:

> All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Star Power's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

Mot. at 4.

### i. **Rule 23(a)**

#### 1. *Numerosity*

The first requirement for class certification pursuant to Rule 23(a) is that the proposed class must be "so numerous that joinder of all members is impracticable." *See* Fed. R. Civ. P. 23(a)(1). Here, in his Declaration attached as an exhibit to the Motion, Plaintiff's counsel avers that he "analyzed the data SlickText produced in response to a third-party subpoena for the Defendant's texting records to ascertain which numbers, if any, were listed on the National Do Not Call Registry," which his firm has access to through subscription. *See* ECF No. 17-2 ("Perrong Decl.") at ¶¶ 10-11. He then states that those files "include a list of individuals whom Defendant contacted via telemarketing text message between approximately January 2024 to present," *id.* at ¶ 12, and that he ascertained that "2,892 telephone numbers, including the Plaintiff's, were sent text messages despite their numbers being on the National Do Not Call Registry at the time of analysis," *id.* at ¶ 13. Thus, Plaintiff argues in her brief that a class of 2,892 members is sufficiently numerous to satisfy Rule 23(a)(1). Mot. at 7. I agree, as the Third Circuit has held that numerosity is typically met "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds

4

40." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Therefore, Plaintiff has satisfied the numerosity requirement.

### 2. *Commonality*

The next requirement is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for & by Kanter*, 43 F.3d at 56. The Third Circuit has held that when a purported class action proceeds under Rule 23(b)(3), "the commonality inquiry is subsumed into the predominance inquiry." *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015). Because Plaintiff seeks class certification pursuant to both Rule 23(b)(2) and (3), I will discuss commonality alongside predominance in Section III.b.ii, *infra*.

### 3. *Typicality*

The third requirement for class certification pursuant to Rule 23(a) is that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality inquiry involves a comparison of 'the attributes of the plaintiff' and 'the class as a whole' to determine if they are sufficiently similar." *Williams v. Pisa Grp., Inc.*, No. 18-cv-4752, 2023 WL 2227697, at *7 (E.D. Pa. Feb. 24, 2023) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 598 (3d Cir. 2012)). "If a plaintiff's claim arises from the same event, practice or course of conduct that gives rises to the claims of the class members, factual differences will not render that claim atypical if it is based on the same legal theory as the claims of the class." *Marcus*, 687 F.3d at 598. "[A] proposed class representative is not 'typical' under Rule 23(a)(3) if 'the representative is subject to a unique defense that is likely to become a major focus of the litigation.'" *Id.* at 599 (internal citations omitted).

Plaintiff argues that her claims are typical of the class because they were harmed through an identical course of conduct: All class members received text messages from Defendant, each advertising an event, even though they were members of the National Do Not Call Registry and did not otherwise consent to receive text messages from Defendant. Mot. at 10. Plaintiff contends that consent issues do not destroy typicality when "the purported customer denies having consented and where Defendant has proffered no consent evidence." *Id.* at 11. And even if consent is an issue, Plaintiff submits, "the fact that Defendant sent messages and the resulting injuries are unquestionably common to call [sic] class members." *Id.*

At this point, the Court cannot agree with Plaintiff that her claims are typical of the class. Specifically, and as discussed in more detail in the analysis of the predominance requirement below, it is unclear at this point whether the potential defense of consent is typical among the class. Although it is true that Defendant has not proffered evidence of consent, in its Answer to the Complaint, Defendant repeatedly asserts that Plaintiff's phone number had "opted in prior to June of 2024" and denies "that there could be a class of persons aggrieved under the TCPA after voluntarily 'opting in' to a text database with option of removing themselves by texting stop." *See, e.g.*, Ans. at ¶¶ 31, 38. The Court simply does not have enough information at this point to determine whether consent is a typical defense that Defendant could assert against all class members. For example, the proposed class does not specify that it only applies to individuals who did not consent to receive text message from Defendant. Or, as another example, Plaintiff does not submit that Defendant does not have a mechanism by which individuals can consent to receiving text messages, making the consent defense moot. Because the Court cannot determine with the information before it that the question of whether each potential class member consented is not "a unique defense [that] will play a significant role at trial," *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006), I decline to hold that Plaintiff's claim is typical of the class.

### 4. *Adequacy*

The final requirement for class certification pursuant to Rule 23(a) is that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy inquiry is two-fold, "testing whether plaintiff's counsel is qualified to represent the class and detecting 'conflicts of interest between named parties and the class they seek to represent.'" *Williams*, 2023 WL 2227697, at *9 (internal citations omitted).

Here, Plaintiff contends she is a "typical adequate class representative"—an "ordinary, well-meaning consumer who is fed up with the text message calls at issue" who is "familiar with the nature of the litigation, the claims at issue, and what is required of her as a class representative." Mot. at 12.

Defendant, having failed to respond to Plaintiff's Motion, offers no rebuttal as to Plaintiff's adequacy as class representative. However, as discussed above, Plaintiff's Declaration in support of her adequacy assertions is unsigned, giving it little to no weight. To the extent Plaintiff files a renewed Motion for Class Certification including a signed version of her Declaration, and to the extent Defendant does not otherwise object to her ability to fairly represent the interests of the class, the Court sees no issue with Plaintiff's adequacy as class representative.

As for the adequacy of Plaintiff's counsel, Plaintiff submits that her attorney, Mr. Perrong, has been co-counsel in other class actions that have been certified and settled, giving him the necessary expertise in class action litigation to represent the class. Mot. at 12. In his Declaration, Mr. Perrong attests that he has been a named plaintiff in TCPA class actions, Perrong Decl. at ¶ 3, that he has been appointed class counsel in a TCPA class action in the Northern District of New York, *id.* at ¶ 6, and that he has been co-counsel in other class action cases resulting in settlements in other jurisdictions, *id.* at ¶ 7. Defendant has offered no evidence to contest Mr. Perrong's

adequacy as class counsel, nor does the Court see any reason at this point that he should not be permitted to proceed representing the class in this case, to the extent it is certified in the future.

### ii.  Rule 23(b)

In addition to satisfying the four requirements set forth in Rule 23(a), Plaintiff must also show that her case is one of the three types of class actions set forth in Rule 23(b). Here, Plaintiff argues that class certification is appropriate pursuant to both Rule 23(b)(2) and (3). *See* Mot. at 12-19. Plaintiff does not make clear whether she seeks certification pursuant to Rule 23(b)(2) and (3) concurrently or alternatively, and she is encouraged to make such clarification in any renewed motion for class certification.

Pursuant to Rule 23(b)(2), the Court may certify a proposed class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). And under Rule 23(b)(3), the Court may also certify a class if it "finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff seeks not only injunctive and declaratory relief, but also "[d]amages to Plaintiff and members of the National DNC Class pursuant to 47 U.S.C. § 227(c)(5)."[2] Compl. at 10. Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). Thus, for Plaintiff's proposed class to be certified pursuant to Rule 23(b)(2), she would need to argue either that the class should be certified concurrently with Rule 23(b)(3) certification,

---

[2] 47 U.S.C. § 227(c)(5) provides the private right of action for an individual to bring a TCPA case "to recover for actual monetary loss from such a violation, or to receive up to $500 in damages for each such violation, whichever is greater."

which allows for the pursuit of individualized monetary damages, *see Wendell H. Stone Co. v. Five Star Advert., LLC*, No. 19-cv-03157, 2021 WL 1080398, at \*6 (D. Colo. Mar. 17, 2021) ("A hybrid class action can refer to a single case where a plaintiff seeks both injunctive and monetary damages through certification under more than one section of Rule 23."), or pursue the argument that statutory damages are "incidental to the requested injunctive relief," leaving Rule 23(b)(3) as a mere alternative grounds for certification, *see Jackson v. Locust Med., LLC*, No. 22-cv-00424, 2024 WL 2701695, at \*5 (M.D. Pa. May 24, 2024) ("In the face of this request for statutory damages under the TCPA, it would be improper to certify this class under Rule 23(b)(2). These statutory damages are not incidental to the requested injunctive relief."); *Morales v. Sunpath Ltd.*, No. 20-cv-1376, 2025 WL 2020053, at \* (D. Del. July 11, 2025) ("Plaintiffs do not address case authority declining to certify a Rule 23(b)(2) class that is proposed alongside separate damages classes if the 'primary intent' underlying the action is to recover damages."), *report and recommendation adopted in part*, No. 20-cv-1376, 2025 WL 3140718 (D. Del. Nov. 10, 2025).

Before the Court can rule on whether Rule 23(b)(2) certification is appropriate, more is needed from Plaintiff as to the propriety of concurrently certifying the classes pursuant to both Rule 23(b)(2) and (3) or that Rule 23(b)(2) certification is sufficient because monetary damages are merely incidental to the requested injunctive and declaratory relief.

As for Rule 23(b)(3), the Court is similarly unconvinced that certification is appropriate at this time. Rule 23(b)(3)'s requirements are commonly known as "predominance" and "superiority," each of which will be discussed in turn. Finally, a Rule 23(b)(3) class must also be "currently and readily ascertainable based on objective criteria." *Marcus*, 687 F.3d at 593. Plaintiff does not address whether the class is ascertainable in her Motion, so the Court does not discuss that requirement at this time.

The predominance requirement is satisfied when "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "[T]he analysis entails (a) first examining each element of the plaintiff's legal claim to see if it involves common issues of law or fact and then (b) determining whether issues common to the class overwhelm issues subject to individualized proof." *Williams*, 2023 WL 2227697, at *11 (citing *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 370-71 (3d Cir. 2015)). As previously noted, "the commonality inquiry is subsumed into the predominance inquiry." *Reyes*, 802 F.3d at 486.

Plaintiff argues that the predominance requirement is met because common issues, "such as the lists of persons called, whether they were on the DNC, and whether the TCPA's other statutory prerequisites are satisfied, are more prevalent than 'non-common aggregation-defeating individual issues,' of which none exist." Mot. at 16 (quoting *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)). Plaintiff relies on the fact that Defendant has adduced no evidence showing consent and avers that Defendant "has admitted that it possessed no consent to contact Plaintiff or any other class member." *Id.* The Court is perplexed by this assertion, as not only does Plaintiff fail to cite to any evidence supporting this supposed admission, but Defendant also repeats throughout its Answer to the Complaint that Plaintiff's phone number had "opted in prior to June of 2024" and denies "that there could be a class of persons aggrieved under the TCPA after voluntarily 'opting in' to a text database with option of removing themselves by texting stop," seemingly doing the opposite of admitting consent. *See* Ans. at ¶¶ 31, 38.

It seems there are outstanding issues as to Defendant's consent mechanism, if any, such that it cannot be said at this point that common questions of law or fact predominate over questions affecting individual members of the proposed class. Plaintiff provides no description of whether or how Defendant obtains consent to send text messages to consumers or how it intends to show

that all proposed class members did not consent, thereby making the consent defense (or lack thereof) common to all class members. *See, e.g.*, *Steven A. Conner DPM, P.C. v. Fox Rehab. Servs., P.C.*, No. 21-cv-1580, 2022 WL 4080761, at \*6 (E.D. Pa. Sept. 6, 2022) ("[T]o determine the type of consent each individual class member did or did not provide Defendant, assuming any was given at all, would require individualized review."), *aff'd*, No. 23-1550, 2025 WL 289230 (3d Cir. Jan. 24, 2025); *Shamblin v. Obama for Am.*, No. 13-cv-2428, 2015 WL 1909765, at \*7 (M.D. Fl. Apr. 27, 2015) ("[Plaintiff] is not entitled to a presumption that all class members failed to consent."). Plaintiff notes that discovery in this case has now closed and Defendant has produced no evidence of consent. Mot. at 16. But Defendant's failure to produce evidence of consent is not enough. Though the Court recognizes the difficulty of proving a negative, more is needed than Plaintiff's bald assertion that Defendant "has admitted that it possessed no consent to contact Plaintiff or any other class member"—a statement Plaintiff makes without any record citation. *Id.* If the issue was Defendant's failure to respond at all to Plaintiff's discovery requests, then Plaintiff should have engaged in motion practice to compel Defendant's participation in discovery. For now, the lack of evidence to support Plaintiff's argument prevents Plaintiff from carrying her burden to meet Rule 23(b)(3)'s predominance requirement.

The Court will address the superiority of a class action over other methods of adjudicating claims under the TCPA once more information is provided as to the key issues noted with commonality, typicality, and predominance.

### c.  **The PTRA Class**

As for her PTRA cause of action, Plaintiff seeks to certify the following class:

All persons in the Commonwealth of Pennsylvania, as determined through their area codes, who (1) received a telephone call from or on behalf of Defendant, (2) at any time during which Defendant was acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General, (3) at any

11

time in the period that begins two years before the date of filing this Complaint to trial.

Mot. at 4.

Before reaching the merits of certifying this class, the Court is faced with a looming question: Should the Court certify a class that seeks relief based on a statute that does not provide a private cause of action? Courts in this District have repeatedly held that the PTRA does *not* create a private cause of action, *see, e.g.*, *Shelton v. FCS Cap. LLC*, No. 18-cv-03723, 2019 WL 6726404, at *3 (E.D. Pa. Dec. 11, 2019); *Perrong v. CMI Mktg. Rsch. Inc.*, No. 22-cv-3733, 2023 WL 6277299, at *3 (E.D. Pa. Sept. 26, 2023); *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. 23-cv-5114, 2024 WL 4228149, at *5-6 (E.D. Pa. Sept. 17, 2024); *Perrong v. Bradford*, No. 23-cv-00510, 2024 WL 2133801, at *3 (E.D. Pa. May 13, 2024) (noting that the court had previously dismissed Perrong's PTRA claims), *rev'd on other grounds*, 157 F.4th 251 (3d Cir. 2025), a maxim that Plaintiff's counsel should be well acquainted with, because he served as *pro se* plaintiff in two of those cases, *see Perrong*, 2023 WL 6277299; *Perrong*, 2024 WL 2133801, and was plaintiff's counsel in another, *see Weingrad*, 2024 WL 4228149.

Although Courts have recognized that the PTRA may serve as a predicate claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law when "a 'person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal' as a result of covered unlawful practices," *see Weingrad*, 2024 WL 4228149, at *6 (quoting *Perrong*, 2023 WL 6277299, at *3), Plaintiff does not appear to make any such requisite allegations.

Before certifying a class that seeks relief under a statute that does not provide it with a private cause of action and consequently wasting valuable judicial resources, I will first order supplemental briefing from the parties as to why Plaintiff's PTRA cause of action should not be

dismissed with prejudice. Indeed, given the general principle Plaintiff cites in her Motion that class actions are appropriate for questions before the Court in which "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke," *see Wal-Mart Stores, Inc.*, 564 U.S. at 350, it is difficult to see how class certification could be appropriate for a group of individuals purportedly aggrieved by Defendant's violation of the PTRA. Indeed, determination of the key factual question—whether Defendant was a registered telemarketer in accordance with the PTRA when they sent Plaintiff and the proposed class members the text messages at issue—would seemingly not change the outcome of the case when the PTRA bestows upon Plaintiff and the class no private right of action in the first place. That being said, after reviewing supplemental briefing, to the extent the cause of action is not dismissed, I will entertain a renewed motion for class certification for the PTRA cause of action at a later time.

## IV.    **CONCLUSION**

For the reasons discussed more fully above, Plaintiffs Motion for Class Certification is denied without prejudice. An appropriate Order follows.

13