**IN IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **WEIHARIK GARCIA, individually and on behalf of all others similarly situated,** | Case No. 24-4823 |
| *Plaintiff*, | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **STAR POWER MARKETING GROUP, LLC,** | |
| *Defendant.* | |

**PLAINTIFF'S RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE WHY HER PENNSYLVANIA TELEMARKETER REGISTRATION ACT CLAIM SHOULD NOT BE DISMISSED WITH PREJUDICE**

Pursuant to the Court's June 24, 2026 Order (ECF No. 20), Plaintiff Weiharik Garcia respectfully submits this response showing cause why her claim under the Pennsylvania Telemarketer Registration Act ("PTRA"), 73 Pa. Cons. Stat. § 2241 *et seq.*, should not be dismissed with prejudice.

**INTRODUCTION**

The PTRA, standing alone, contains no express private right of action. But no such freestanding right is required, because the General Assembly built the private remedy into the statute itself by another route. The PTRA provides that a violation of any of the provisions of the Act constitute a violation of the Unfair Trade Practices and Consumer Protection Law ("UTP/CPL"), 73 Pa. Cons. Stat. § 2246, 2247, and the UTP/CPL in turn supplies a private right of action to consumers. 73 Pa. Cons. Stat. § 201-9.2(a). The Commonwealth Court has confirmed precisely this predicate mechanism. *Com. ex rel. Corbett v. Peoples Benefit Servs., Inc.*, 923 A.2d 1230, 1239 (Commw. Ct. 2007). And the Complaint invokes that vehicle

1

expressly. Count II seeks statutory damages "under 73 Pa. Cons. Stat. § 201-9.2(a)," Compl. ¶ 53, and the Prayer for Relief seeks "[d]amages to Plaintiff and members of the PTRA Class pursuant to the PTRA and UTP/CPL." Compl., Prayer ¶ F. This is not a case, like *Shelton v. FCS Cap. LLC*, No. 2:18-CV-03723-JDW, 2019 WL 6726404, at *3 (E.D. Pa. Dec. 11, 2019), where the plaintiff failed to plead the UTP/CPL predicate at all. The predicate is pled.

The real question, then, is the one the Court's opinion identified through its citation to *Weingrad* and *CMI*, whether Ms. Garcia satisfies § 201-9.2(a)'s standing requirements, that she "purchase[d] or lease[d] goods or services primarily for personal, family or household purposes and thereby suffer[ed] any ascertainable loss of money or property." Plaintiff does not ask the Court to read the purchase or ascertainable loss requirements out of the statute. Rather, Ms. Garcia satisfies both, on the face of the Complaint as pled.

*First*, she is a purchaser. Ms. Garcia purchases residential telephone service and a telephone itself for personal, family, and household purposes. Compl. ¶¶ 15-18. Nothing in § 201-9.2(a) requires that the qualifying purchase be made *from the defendant*, and Pennsylvania law squarely rejects any privity requirement. *Second*, she suffered an ascertainable loss of that property. Defendant's unlawful, unregistered telemarketing text message calls were delivered *through*, and consumed,  the very service and telephone she purchased, her telephone line availability, and telephone storage space, battery life, and bandwidth. Compl. ¶ 35. The loss is not merely connected to the purchase; it is a *depletion of the purchased things themselves*.

Because the claim as pled fits the statutory text, because the Pennsylvania Supreme Court has repeatedly instructed that the UTP/CPL is a remedial statute to be construed liberally and has rebuked lower courts for grafting extratextual limitations onto it, *Danganan v. Guardian Prot. Servs.*, 179 A.3d 9, 16-17 (Pa. 2018), the PTRA claim should not be dismissed. At an absolute

2

minimum, it should not be dismissed *with prejudice* without appellate review. Whether a call recipient may enforce the PTRA through the UTP/CPL is a novel and unsettled question of Pennsylvania law on which the federal district courts are split and no Pennsylvania appellate court has spoken. If the Court is nonetheless inclined to dismiss, Plaintiff respectfully requests that the Court certify its order for immediate interlocutory appeal under 28 U.S.C. § 1292(b), so that the question may be presented to the Third Circuit, and, through the Third Circuit, certified to the Supreme Court of Pennsylvania pursuant to Pa.R.A.P. 3341, rather than conclusively resolved for thousands of Pennsylvania consumers by federal appellate prediction alone.

Defendant, consistent with its conduct throughout this litigation, its default, its failure to respond to discovery, and its failure to oppose class certification, is not expected to participate in this briefing either. But Plaintiff addresses the merits fully, so the Court may decide them regardless. *Cf. Cunningham v. Wawa, Inc.*, 387 F. Supp. 3d 529, 539 (E.D. Pa. 2019).

## ARGUMENT

### I.    The PTRA claim proceeds through the UTP/CPL, which the Complaint expressly invokes.

The PTRA does not merely permit UTP/CPL enforcement, it commands it. Section 2246 deems every violation of the Act a violation of the UTP/CPL, and Section 2247, a provision the General Assembly captioned "Remedies available to consumers," provides that the Act does not limit the remedies otherwise available to consumers under the UTP/CPL or any other law. 73 Pa. Cons. Stat. §§ 2246, 2247; *see also* 1 Pa.C.S. § 1924 (headings may be considered in construction). The UTP/CPL's remedies for consumers include the private right of action of § 201-9.2(a), with statutory damages of $100 per violation (which may be trebled) and fee shifting.

Every court to consider the mechanism has agreed it *exists*. *Peoples Benefit Servs.*, 923 A.2d at 1238 n.15 (PTRA violation constitutes a UTP/CPL violation); *Perrong v. Brief Call,*

*Inc.*, No. 22CIV4128PGGSN, 2024 WL 1382158, at *10 (S.D.N.Y. Mar. 29, 2024) (denying motion to dismiss PTRA claim brought through the UTP/CPL); *Bower v. Nat'l Admin. Serv. Co., LLC*, No. 4:21-CV-00998, 2022 WL 821166, at *2 (M.D. Pa. Mar. 17, 2022) (same, holding a violation of the PTRA is a predicate violation of the UTP/CPL). The decisions in this District dismissing PTRA claims did so either because the plaintiff *failed to plead* the UTP/CPL predicate, *Shelton*, 2019 WL 6726404, at *3, or because the plaintiff there could not satisfy § 201-9.2(a)'s standing elements on the facts alleged, *Perrong v. CMI Mktg. Rsch. Inc.*, No. CV 22-3733, 2023 WL 6277299, at *3 (E.D. Pa. Sept. 26, 2023) (plaintiff failed to plead purchase element); *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. CV 23-5114, 2024 WL 4228149, at *2 (E.D. Pa. Sept. 17, 2024) (same). None holds, because none could hold, given § 2246's plain text, that the PTRA is categorically unenforceable by private plaintiffs as a predicate act that gives rise to a UTP/CPL claim.

The question, then, and the one addressed in the next section, is whether the plaintiff has pled a purchase and ascertainable loss of property, goods, or services for personal, family, or household use. Here, unlike in *Shelton*, the Complaint pleads the predicate. Count II expressly seeks statutory damages "under 73 Pa. Cons. Stat. § 201-9.2(a)," Compl. ¶ 53, and the Prayer for Relief seeks damages and injunctive relief "pursuant to the PTRA and UTP/CPL." Compl., Prayer ¶¶ F-G. The question thus narrows to whether Ms. Garcia satisfies § 201-9.2(a)'s two standing elements, a qualifying purchase and an ascertainable loss. She satisfies both.

## II.    Ms. Garcia is a "person who purchases . . . services primarily for personal, family or household purposes" because she purchases residential telephone service.

Section 201-9.2(a) confers a cause of action on "[a]ny person who purchases or leases goods or services primarily for personal, family or household purposes and thereby suffers any ascertainable loss of money or property, real or personal, *as a result of* the use or employment *by*

*any person* of a method, act or practice declared unlawful" by the UTP/CPL. 73 Pa. Cons. Stat. § 201-9.2(a) (emphasis added).

Two features of this text are dispositive, and both are frequently overlooked.

*First*, the statute does not say the plaintiff must have purchased goods or services *from the defendant*, much less that she must have purchased the very goods the defendant was hawking. It requires only that she be a "purchaser of consumer goods or services, and that her loss of those purchased goods and services "result from" an unlawful practice "by any person." Pennsylvania law has long rejected any privity requirement under § 201-9.2. *Valley Forge Towers S. Condo. v. Ron-Ike Foam Insulators, Inc.*, 574 A.2d 641, 645-47 (Pa. Super. 1990), *aff'd*, 605 A.2d 798 (1992) (statute contains no "privity requirement"; a purchaser may sue a non-seller whose unlawful conduct caused loss in connection with a consumer purchase).

This is how the statute operates every day. *Valley Forge* itself is the paradigm. The plaintiff condominium purchased a roof from an installing contractor, yet the Superior Court held it could maintain a UTP/CPL action against the roofing-material *manufacturer*, an entity from which it had purchased nothing, because the manufacturer's promotional representations and warranty constituted "unlawful practices" that caused the purchaser's loss. *Id.* at 643-48. The Superior Court grounded that holding in the same textual features Plaintiff invokes here. Section 201-9.2(a) confers standing by reference to the *plaintiff's* status as a purchaser of consumer goods or services and imposes liability by reference to the *defendant's* commission of an unlawful practice, "by any person," that causes the purchaser's loss of those goods or services. *Id.* at 644-45. The two inquiries are independent. A consumer who buys a product from a retailer may sue the manufacturer whose deceptive advertising infected the transaction, and the consumer may equally sue a downstream actor she never contracted with, so long as her loss

flows from that actor's unlawful conduct. What the statute demands is a qualifying purchase and a causal connection between the unlawful practice and a loss to the purchaser, not that the defendant be the merchant on the other side of the sales counter or the entity from which the lost money or goods are purchased.

The same logic applies here with at least equal force. If a condominium that bought and paid for a roof from a contractor may sue the manufacturer whose unlawful practices caused it loss (refusal to repair a roof leak in accordance with a warranty) in connection with that purchase, then a consumer who buys residential telephone service from her carrier may sue the telemarketer whose unlawful practices caused her loss in connection with *that* purchase. Indeed, the connection here is tighter than in *Valley Forge*. The manufacturer's misrepresentations there merely *induced* the purchase, while Defendant's unlawful calls physically invaded and consumed the already-purchased service itself. The defendant changes from case to case, but the purchaser's statutory standing does not.

*Second*, Ms. Garcia is exactly such a purchaser. She purchases her residential cellular telephone and service primarily for personal, family or household purposes. The Complaint pleads this as follows: her telephone and number "is a residential, non-commercial telephone number," which she "uses . . . for personal, residential, and household reasons" and "does not use . . . for business reasons," and which "is assigned to a residential telephone exchange service for consumers." Compl. ¶¶ 15-18. One is a residential subscriber with a residential cell phone because one *purchases the service and the cell phone* primarily for personal and household use.

The nexus between that purchase and Defendant's unlawful practice is intrinsic. An unregistered telemarketing call does not merely happen to a consumer who coincidentally owns a phone. It is delivered *through*, and consumes, the very *service and storage space on* the

telephone the consumer purchased. Each of Defendant's unlawful calls occupied Ms. Garcia's telephone line, storage space, battery life, and bandwidth, the purchased commodity itself, as well as her time. Compl. ¶ 35. This distinguishes the cases in which non-purchasers or failed purchasers were not covered under § 201-9.2. *See, e.g.*, *Wise v. Am. Gen. Life Ins. Co.*, 459 F.3d 443, 452 (3d Cir. 2006) (plaintiff who *sought but failed* to purchase was not a purchaser). Ms. Garcia's purchase was complete, ongoing, and was invaded, by the time of the unlawful conduct.

This reading follows from the text, but it is also compelled by the Pennsylvania Supreme Court's construction principles. The UTP/CPL is remedial legislation that "is to be construed liberally to effect its object of preventing unfair or deceptive practices." *Gregg v. Ameriprise Fin., Inc.*, 245 A.3d 637, 646 (Pa. 2021); *see also* 1 Pa. Cons. Stat. § 1928(c) (absent an express provision otherwise, Commonwealth statutes "shall be liberally construed to effect their objects and to promote justice.").

In *Danganan*, the Court refused to engraft onto the UTP/CPL a "sufficient nexus" limitation that appeared nowhere in the statutory text, holding that the statute's "plain language" and remedial purpose foreclosed judicially invented narrowing constructions. 179 A.3d at 15-17. Reading § 201-9.2(a)'s phrase "purchases . . . goods or services" to mean "purchases the *defendant's* goods or services" commits the same error *Danganan* condemned because it adds words the General Assembly did not write, in derogation of a remedial statute. As a result, Ms. Garcia has stated a claim under the UTP/CPL because she alleges that the Defendant's conduct, its calling in violation of state telemarketing law, caused her the loss of her phone and service.

## III.    Ms. Garcia pleads an "ascertainable loss of money or property," the depletion of the telephone and telephone service she purchased.

Plaintiff does not ask the Court to dispense with the ascertainable loss requirement, either, which is likewise satisfied here. The Complaint alleges that Defendant's calls "occupied

[class members'] telephone lines, storage space, battery life, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks." Compl. ¶ 35. Each of these is money or property, purchased by the consumer, and measurably consumed by each unlawful text. Cellular data is metered and sold by the gigabyte, text message calls are counted by the message, voice calls are measured in duration, device storage is finite and priced, battery cycles are a quantifiable fraction of a device's useful life, and the occupation of the line itself deprives the subscriber of the use and benefits of a service she pays for. To be sure, the losses are small. But "ascertainable" means that they are capable of being found out or discovered, not large or small. They are capable of mathematical proof on a classwide basis from Defendant's own texting records.

Judge Pratter held exactly this in the TCPA context, rejecting the argument that fractions of a cent are too trivial to constitute economic injury from unwanted call, reasoning that a telephone service charge "is that economic loss (to say nothing of the associated annoyance) that the TCPA unambiguously seeks to rectify. The TCPA does not contain a 'de minimis' charge below which a plaintiff cannot state a claim. So, any charge—even the fractional $0[.]017 Mr. Perrong alleges he was charged for the subject call—suffices." *Perrong v. Victory Phones LLC*, No. CV 20-5317, 2021 WL 3007258, at *7 (E.D. Pa. July 15, 2021). Neither does the UTP/CPL, which is precisely why the General Assembly supplied a $100 statutory damages floor, 73 Pa. Cons. Stat. § 201-9.2(a). The statute anticipates real but modest actual losses and ensures they remain worth vindicating in the event they do not exceed $100.

And the Court can hold that the Plaintiff has suffered an ascertainable loss without reaching the issue of attorneys' fees. *Grimes v. Enter. Leasing Co. of Phila., LLC*, 105 A.3d 1188, 1193 (2014), is not to the contrary. *Grimes* held that attorney's fees incurred to contest a

deceptive charge are not an ascertainable loss, because otherwise any consumer could manufacture standing by hiring a lawyer. *Id.* at 1194. Ms. Garcia claims nothing of the sort. Her loss (and the loss of each putative class member) is not a cost of vindicating their rights. Rather, it is the depletion of their purchased property and services was effected directly by the unlawful conduct itself, complete the moment each text call arrived, before any lawyer entered the picture.

**IV.    Any other construction would render Sections 2246 and 2247 of the PTRA a dead letter, an absurd result the General Assembly cannot have intended.**

If § 201-9.2(a) were read to require that a telemarketing victim have *purchased the telemarketer's wares*, the consumer remedy provisions of the PTRA would be structurally impossible to invoke. Telemarketing is, by definition, a *pre-purchase* solicitation, and the PTRA's registration requirement exists to protect consumers from loss of their telephone services from the *call*, not merely from a consummated sale. On the narrow reading, the only private plaintiffs who could ever enforce the PTRA through the UTP/CPL would be consumers who succumbed to the sales pitch of an unregistered, and, experience teaches, frequently fraudulent, telemarketer. The statute would protect victims only after the harm it was designed to prevent had fully materialized, and would leave the consumer who hung up (or who, like Ms. Garcia, never asked to be texted at all) without any remedy whatsoever.

The rules of statutory construction forbid that result. Courts must presume "[t]hat the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable" and "intends the entire statute to be effective and certain." 1 Pa. Cons. Stat. § 1922(1)-(2); *see also* § 1921(a) (every provision to be given effect). A construction under which § 2246's deeming provision and § 2247's "Remedies available to consumers" section can never actually be used by a consumer fails both presumptions. The construction Plaintiff advances, under which the consumer's qualifying purchase is the telephone service through which the

9

unlawful call is inflicted, gives every provision effect, honors the statutory text, and requires no judicial creativity at all. *See Gregg*, 245 A.3d at 646 (UTP/CPL construed to benefit consumers).

**V.     In the alternative, if the Court is inclined to dismiss, it should certify the question for interlocutory appeal under 28 U.S.C. § 1292(b) so that it may ultimately be certified to the Supreme Court of Pennsylvania.**

The Court asked why the PTRA claim should not be dismissed *with prejudice*. Even if the Court is not persuaded by the foregoing, the dispositive question, whether a consumer who purchases a residential telephone and associated service and receives unlawful solicitations from an unregistered telemarketer may enforce the PTRA through the UTP/CPL, is a pure question of Pennsylvania statutory construction that no Pennsylvania appellate court has decided. The Commonwealth Court has confirmed the predicate mechanism only in an Attorney General enforcement action, *Peoples Benefit Servs.*, 923 A.2d at 1238 n.15, and the federal district courts are split: *compare Brief Call, Inc.*, 2024 WL 1382158, at *10, and *Bower*, 2022 WL 821166, at *2, *with CMI*, 2023 WL 6277299, at *3, and *Weingrad*, 2024 WL 4228149, at *2 (dismissing them). Only Pennsylvania's courts can settle the question authoritatively.

This Court cannot certify the question to the Supreme Court of Pennsylvania directly. Pa. R.A.P. 3341 accepts certified questions only from the Supreme Court of the United States or a United States court of appeals. Pa. R.A.P. 3341(a). But the established pathway runs through this Court. If the Court dismisses the PTRA claim, Plaintiff respectfully requests that it certify the order for immediate appeal under 28 U.S.C. § 1292(b), which would permit the Third Circuit to accept the appeal and, in turn, to either rule on it or petition the Supreme Court of Pennsylvania to accept certification of the question pursuant to Pa.R.A.P. 3341 and Third Circuit L.A.R. 110.1.

Each of § 1292(b)'s requirements is satisfied. *First*, the question is a "controlling question of law." It is purely legal, the construction of 73 Pa. Cons. Stat. §§ 2246-2247 and 73 Pa. Cons. Stat. § 201-9.2(a), and it controls the existence *vel non* of an entire cause of action

10

asserted on behalf of Ms. Garcia and 6,675 putative Pennsylvania class members. *Second*, there is "substantial ground for difference of opinion." The district courts within and beyond this Circuit have divided on the precise question at the pleadings stage, and no state or federal appellate decision or even summary judgment decision resolves it, the paradigmatic circumstance for § 1292(b) certification. *Third*, immediate appeal "may materially advance the ultimate termination of the litigation," as the answer will determine the scope of any class to be certified, the claims to be tried, and the measure of classwide damages, and resolving it now avoids the prospect of a second class certification proceeding and retrial should an *Erie* prediction later prove wrong. The question also readily satisfies Rule 3341's own criteria for acceptance by the Supreme Court of Pennsylvania. It is a question of first impression whose resolution is of substantial public importance, governing the private remedies of every Pennsylvania consumer subjected to unregistered telemarketing. Pa. R.A.P. 3341(c).

By contrast, a dismissal with prejudice unaccompanied by § 1292(b) certification would conclusively extinguish the state law claims of thousands of Pennsylvania consumers on the basis of a federal prediction of Pennsylvania law that Pennsylvania's appellate courts would never have any opportunity to make.

## CONCLUSION

The PTRA claim, as pled, proceeds through the UTP/CPL, which the Complaint expressly invokes. Ms. Garcia is a purchaser of a residential telephone and service for personal, family, and household purposes. She suffered an ascertainable loss of that purchased property each time Defendant's unregistered solicitations consumed them. The claim should not be dismissed. In the alternative, if the Court is inclined to dismiss the claim, Plaintiff respectfully requests that the Court certify its order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), so that the underlying question of Pennsylvania law may be certified by the Third

Circuit to the Supreme Court of Pennsylvania pursuant to Pa.R.A.P. 3341. Plaintiff will

separately file her renewed Motion for Class Certification on the remaining counts in accordance

with the Court's Order.

Plaintiff,
By Counsel

Dated: July 10, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
1669 Edgewood Road, Suite 218
Yardley, PA 19067
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

*Attorney for Plaintiff and Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 10, 2026, I filed the foregoing document using the court's

CM/ECF system, which will automatically send notification of filing to all counsel of record.

By: /s/ Andrew Roman Perrong
Andrew Roman Perrong

12