IN IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WEIHARIK GARCIA, individually and on behalf of all others similarly situated,** | **Case No. 24-4823** |
| *Plaintiff,* | **CLASS ACTION** |
| *v.* | **JURY TRIAL DEMANDED** |
| **STAR POWER MARKETING GROUP, LLC,** | |
| *Defendant.* | |

**PLAINTIFF'S RENEWED MOTION FOR AND MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR CLASS CERTIFICATION**

**INTRODUCTION**

This case is the touchstone of the unlawful marketing efforts Congress sought to curtail when it passed the Telephone Consumer Protection Act (TCPA) in 1991. *See, e.g.*, 137 CONG. REC. 30, 821 (1991) (statement of Sen. Fritz Hollings describing telemarketing calls as "the scourge of modern civilization"). The TCPA created, among other regulations, the National Do Not Call Registry (DNC). DNC compliance is, in theory, quite simple. Do Not Call means precisely that: Do Not Call. *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649 (4th Cir. 2019). Plaintiff's analysis, which goes entirely unrebutted and uncontested, confirms that Defendant called Plaintiff and 2,891 other class members whose numbers were on the Do Not Call list, and Plaintiff and 6,674 other Pennsylvania class members without registering as telemarketers under Pennsylvania law anyway as part of the text messaging campaign at issue here. (Exhibit 1, Declaration of Andrew Roman Perrong ("Perrong Decl.") ¶¶ 14-43).

This is Plaintiff's renewed motion, filed in accordance with the Court's June 24, 2026 Memorandum Opinion (ECF No. 19) ("Mem. Op.") and Order (ECF No. 20). This renewed motion

addresses the Court's guidance and each of the concerns the Court identified. It attaches a new, signed declaration, and explains the clerical error in counsel's office that caused the unsigned draft to be docketed. (Perrong Decl. ¶¶ 48-49; Exhibit 2, Declaration of Weiharik Garcia ("Garcia Decl.").) It supports every factual assertion, including every assertion regarding consent, with citations to the evidentiary record. It expressly addresses ascertainability. And it clarifies that Plaintiff seeks certification of both Classes under Rule 23(b)(3) and, concurrently, a hybrid certification under Rule 23(b)(2) limited to injunctive and declaratory relief.

The Court's opinion focused principally on consent, specifically, on whether consent might present an individualized issue defeating typicality and predominance. Mem. Op. at 6, 10-11. The record now before the Court answers that concern in two independent ways. *First*, consent to receive telemarketing calls is an affirmative defense on which Star Power, not Plaintiff, bears the burden of proof. Discovery has closed, and Star Power developed no evidence of consent as to Ms. Garcia or as to anyone else: it identified zero documents in its initial disclosures, it never answered a single interrogatory, including Interrogatory No. 6, which asked it to state every fact supporting any contention of consent, it never served written responses to Plaintiff's requests for production and never produced a single page of documents, and it admitted that it does not maintain the FTC Subscription Account Number (SAN) required even to access the Do Not Call Registry. (Perrong Decl. ¶¶ 30-42.)

*Second*, and independent of any burden of proof, the only records of the texting campaign in existence, obtained by Plaintiff through a subpoena to Star Power's own texting vendor, SlickText, contain six data fields, and only six: "to," "from," "body," "media," "sent," and "delivered." No consent, opt-in, opt-in source, opt-in date, or similar field exists anywhere in those records. (Perrong Decl. ¶¶ 15-22.) There is, accordingly, no individualized consent inquiry that

2

could be conducted, even in theory. The consent issue is a *common* issue, because it will be resolved for every class member, including Ms. Garcia, on the same uniform, and uniformly empty, record.

Notably, Star Power has *not* hired an expert to refute Plaintiff's analysis. In fact, it hasn't propounded *any* discovery on the Plaintiff, which makes this particular TCPA class certification motion, generally a battle of the experts, unique. Plaintiff seeks to certify a class of individuals who Defendant Star Power Marketing Group, LLC texted without consent, despite their numbers being on the Do Not Call Registry. Discovery in this matter has further revealed no evidence of consent because Defendant did not respond to any of the Plaintiff's requests for production seeking evidence of the same, never answered an interrogatory, and identified no documents in its initial disclosures. (Perrong Decl. ¶¶ 30-42.) Moreover, Star Power served its responses to Plaintiff's requests for admission twenty-seven days late. They were due March 13, 2025, and were not served until April 9, 2025, without any extension requested or agreed and without any motion under Rule 36(b) to withdraw or amend, and each matter addressed therein is therefore deemed admitted by operation of Rule 36(a)(3). (Perrong Decl. ¶¶ 35-39.) Even taken on their own terms, however, those responses *admit* that Star Power does not maintain an FTC Subscription Account Number, meaning it could not have accessed, much less scrubbed against, the Do Not Call Registry as to any class member. (Perrong Decl. ¶ 37.) Accordingly, the uncontroverted evidence in this case has revealed no defenses and third-party discovery has revealed *prima facie* violations of the TCPA, rendering class certification appropriate. This class, with unrefuted evidence offered by the plaintiff, should be certified.

Among other enforcement mechanisms, the TCPA allows a private right of action for violations of the Do-Not-Call registry. *See Krakauer*, 925 F.3d at 649 (citing 47 U.S.C. §

227(c)(5)). In *Krakauer*, the Fourth Circuit observed that "[t]he private cause of action in §

227(c)(5) offers many advantages for class-wide adjudication" because, among other things, "the

liability determinations involve no questions of individual reliance . . . [and] the damages

calculations do not turn on individual evidence." *Id.* at 655-56 (citations omitted). As a result, and

particularly "[g]iven the remedial purpose of the TCPA," it was "no surprise" to the Fourth Circuit

that the cause of action in *Krakauer* "was conducive to class-wide disposition." *Id.*; *accord Ira

Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013) (noting that "[c]lass certification is

normal [in TCPA cases] . . . because the main questions . . . are common to all recipients.").

So too here. Just as in *Krakauer*, the common questions that arise in this case predominate

for the proposed class. All putative class members received illegal telemarketing calls from Star

Power even though they were listed on the Do-Not-Call Registry. The data analysis issues in this

case are likewise streamlined: Star Power sent the messages itself, as confirmed through third-

party discovery, and the class has already been ascertained from the data obtained through third-

party discovery. (Perrong Decl. ¶¶ 15-27.) All class members received functionally identical

marketing text messages arising from Star Power's telemarketing campaign to advertise its events,

and the damages sought by Plaintiff and class members under the TCPA are set by statute.

Resolving the thousands of TCPA claims present here is undoubtedly the superior method for

addressing Star Power's systematic TCPA violations, given the inefficiency of what might

otherwise be numerous identical lawsuits, or none at all.

And this case also poses no individualized issues. Defendant has not produced any

evidence showing that it obtained consent to contact the Plaintiff and other class members.

(Perrong Decl. ¶¶ 40-42.) Although Star Power asserted a conclusory opt-in theory in its Answer,

it developed and disclosed no evidence supporting that theory during discovery. At bottom,

adjudication of the claims and defenses here can be accomplished on a classwide basis. Many class members would otherwise forfeit their claims due to the high cost of suing individually under the TCPA, since the $405 filing fee would negate most of the potential statutory damages. *See Krakauer*, 925 F.3d at 656 ("In enacting the [TCPA] Congress sought to deter an activity that, while pernicious and disruptive, does not trigger extensive liability in any single case. Since few individuals would have an incentive to bring suit, no matter how frustrated they were with the intrusion on their privacy, the TCPA opted for a model that allows for resolution of issues without extensive individual complications."). Thus, class-wide liability is the only way to ensure that corporations such as Star Power stop systematically violating the law and compensate those who were injured.

### PROPOSED CLASSES

For the reasons that follow, the Plaintiff respectfully requests that this Court certify the National DNC class and PTRA class as follows under Fed. R. Civ. P. 23(b)(3), and, concurrently, for corresponding injunctive relief under Rule 23(b)(2):

> **National DNC Class:** All persons in the United States whose (1) telephone numbers were on the National Do Not Call Registry for at least 31 days, (2) but who received more than one telemarketing call from or on behalf of Defendant encouraging the purchase of Star Power's goods or services, (3) within a 12-month period (4) at any time in the period that begins four years before the date of filing this Complaint to trial.

> **Pennsylvania Telemarketer Registration Act Class:** All persons in the Commonwealth of Pennsylvania, as determined through their area codes, who (1) received a telephone call from or on behalf of Defendant, (2) at any time during which Defendant was acting as a "telemarketer" but not licensed as a "telemarketer" with the Pennsylvania Office of Attorney General, (3) at any time in the period that begins two years before the date of filing this Complaint to trial.

As this Court has directed, the Plaintiff stands ready to file an appropriate supplemental motion seeking to certify the PTRA class at the appropriate time once the Court rules on the PTRA

cause of action in response to its Order, although Plaintiff addresses the propriety of the PTRA class briefly in this Motion.

As explained above, there are 2,892 such putative class members in the National DNC class and 6,675 such putative class members in any potential PTRA class. (Perrong Decl. ¶¶ 25-26.) Star Power has not disputed the Plaintiff's analysis with one of its own, nor has it produced any evidence of any affirmative defenses to either of these two claims, in addition to failing to plead such defenses as an initial matter. (Perrong Decl. ¶¶ 40-42.)

One note on the class definitions, in response to the Court's observation that "the proposed class does not specify that it only applies to individuals who did not consent." Mem. Op. at 6. That omission is deliberate, and it is the correct practice in this District. A class defined to include only persons "who did not consent" would be an impermissible "fail-safe" class, one whose membership turns on the merits of each member's claim, such that anyone who loses was never a member bound by the judgment. *See Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 623-25 (E.D. Pa. 2015) (rejecting TCPA class definitions incorporating lack of consent as impermissible fail-safe classes). The classes are instead defined by objective, administrable criteria, presence in Star Power's vendor's texting records, presence on the Registry, and message counts within the statutory window, and the absence of consent is addressed where it belongs: as Star Power's affirmative defense, on which it bears the burden of proof, and as to which the record is uniform for the entire class. *See* Parts A.3 and B.3, *infra*.

## RELEVANT LAW

In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that Americans were "outraged over the proliferation of

6

intrusive, nuisance calls to their homes from telemarketers." Pub. L. No. 102-243, §§ 2(5)-(6) (1991) (codified at 47 U.S.C. § 227). Perhaps the most well-known aspect of the TCPA was the creation of the Do-Not-Call Registry (DNC Registry) to provide a safe haven from unwanted marketing calls. By adding a telephone number to the Registry, consumers indicate they don't want telemarketing calls. *See* 47 C.F.R. § 64.1200(c)(2). The TCPA and its implementing regulations prohibit calling residential telephone subscribers on the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2); 16 C.F.R. § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.").

A seller may lawfully call a number on the Registry only in narrow circumstances, each of which it must prove. As relevant here, the regulation permits such a call only where the seller "has obtained the subscriber's prior express invitation or permission" evidenced by "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed," 47 C.F.R. § 64.1200(c)(2)(ii), or where the caller adduces evidence it has satisfied every element of the regulatory safe harbor. Accessing the Registry for scrubbing requires a Subscription Account Number (SAN), which Star Power has admitted it does not maintain. (Perrong Decl. ¶ 37.) Consent under these provisions is an affirmative defense, and the burden of proving it rests on the caller. *KHS Corp. v. Singer Fin. Corp.*, 376 F. Supp. 3d 524, 528 (E.D. Pa. 2019) (citing *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1044 (9th Cir. 2017)); *Smith v. Pro Custom Solar LLC*, No. CV 19-20673 (KM) (ESK), 2021 WL 141336, at *4 (D.N.J. Jan. 15, 2021) (collecting cases

7

for the proposition that consent in a TCPA is not an element of the claim but an affirmative defense, and "thus it is not the plaintiff's burden to pre-rebut it in order to avoid dismissal.").

The TCPA creates a private right of action for injunctive and monetary relief for any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the [TCPA] regulations." 47 U.S.C. § 227(c)(5). As the Fourth Circuit recognized in *Krakauer*, the TCPA's "simple and administrable" provisions, the "obvious attempt [by Congress] to vindicate the public interest" through the statute's private enforcement provisions, and the overarching congressional intent "to allow consumers to bring their claims at modest personal expense" all combine to "make TCPA claims amenable to class action resolution." 925 F.3d at 663.

Recognizing the particular harm that telemarketers' failure to register under Pennsylvania law poses to Pennsylvania residents, the General Assembly passed the Pennsylvania Telemarketer Registration Act. It is a violation of the Act to place a telephone solicitation call, as a "telemarketer," to a Pennsylvania resident without first registering as a telemarketer with the Office of the Attorney General. 73 PA. CONS. STAT. § 2243. As set forth more fully in Plaintiff's response to the Court's show-cause order (ECF No. 21), the General Assembly built the private remedy into the statute by making every PTRA violation a *per se* violation of the UTP/CPL, 73 PA. CONS. STAT. § 2246, while expressly preserving consumers' UTP/CPL remedies, *id.* § 2247; the UTP/CPL, in turn, supplies the private right of action, 73 PA. CONS. STAT. § 201-9.2(a), and provides for statutory damages of $100, which can be up to trebled for each violation, in addition to providing an award of attorneys' fees and costs.

**FACTS**

Because the Court's principal concern was the absence of record support for Plaintiff's statements about consent, Mem. Op. at 10-11, Plaintiff sets out that factual record here.

In its initial disclosures, attached herein as Exhibit 3, Star Power identified SlickText as the third-party company "providing the text services" at issue, and identified Plaintiff's subpoena to SlickText as the source of "the relevant documents." Plaintiff subpoenaed SlickText for the complete records of the campaign. SlickText's production, the only records of the campaign in the record, contains six data fields, and only six: "to," "from," "body," "media," "sent," and "delivered." (Perrong Decl. ¶ 17.) There is no field of any kind reflecting consent, and no information of that kind appears anywhere in the production. (Perrong Decl. ¶¶ 18-19.)

Plaintiff served her First Set of Discovery on February 11, 2025. (Perrong Decl. ¶ 30, Ex. 4.) Interrogatory No. 6 asked Star Power, if it contended that Plaintiff consented, to state all supporting facts and to identify the date and means by which consent was purportedly obtained. Star Power has never answered that interrogatory, or any other. (Perrong Decl. ¶ 31.) Request for Production No. 2 sought all documents supporting Star Power's defenses, and Request No. 15 sought its TCPA compliance policies, expressly including policies for obtaining or verifying prior express consent. (Perrong Decl. ¶ 33.) Star Power has never served a written response to any request for production and has never produced a single page of documents. (Perrong Decl. ¶ 34.) Its responses to the requests for admission, the only discovery responses it ever served, were due March 13, 2025, but were not served until April 9, 2025. Star Power never sought an extension and has never moved under Rule 36(b) to withdraw or amend its responses deemed admitted. (Perrong Decl. ¶¶ 35-36.) Even in those untimely responses, attached herein as Exhibit 5, Star Power *admitted* that it does not maintain an FTC Subscription Account Number (Request No. 12), and admitted that upon receipt of pre-suit correspondence, Plaintiff "was swiftly removed from

9

the database upon [her] request" (Request No. 3). Star Power asserted that its do-not-call policy "is accessible online and available to any party that opts in to the database," but it has never produced that policy or identified where it can be found. (Perrong Decl. ¶ 39.) Fact discovery has closed. As of today, Star Power has never produced any document, record, screenshot, log, database entry, or writing of any kind evidencing consent by Ms. Garcia or by any other recipient. (Perrong Decl. ¶ 42.)

Star Power's Answer pleads no affirmative defenses at all. (ECF No. 11.) Its initial disclosures identify no documents in its possession and state its "damages" position in the alternative: "that Plaintiff opted in to receive messages or in the alternative a prior owner of the phone number opted-in." Those are two mutually exclusive theories, unaccompanied by any date, method, source, or document for either, and amount to an acknowledgment that Star Power itself does not know how Ms. Garcia's number entered its vendor's database. And when Plaintiff's counsel wrote to Star Power before suit, identifying Ms. Garcia's number as registered on the DNC Registry and asking whether Star Power claimed to have her consent, Star Power's complete response was: "Received and understood. It's been removed from StarPower's database." It did not assert consent, identify any source for her number, or attach any consent record, then or ever, despite being explicitly requested to do so. (Ex. 6). For that matter, Ms. Garcia's signed declaration establishes that her number has been registered on the DNC Registry, that she received Star Power's marketing text message calls anyway, and that she never consented to receive them through any channel. (Garcia Decl.)

## ARGUMENT

### A.  This case satisfies the requirements of Rule 23(a).

A plaintiff seeking class certification must demonstrate he has satisfied the four threshold requirements of Rule 23(a). *Baby Neal for & by Kanter v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994). In addition, a plaintiff must satisfy one of the three parts of Rule 23(b). *Id.* This case satisfies the requirements of Rule 23(a)(1), (2), (3), and (4) because numerosity, commonality, typicality, and adequacy are met.

The Court's inquiry at the class certification stage centers upon whether Plaintiff has demonstrated that she meets the requirements of Rule 23, not whether Plaintiff will ultimately prevail on the merits. *See Amgen v. Connecticut Ret. Plans*, 568 U.S. 455, 465-66 (2013). Few actions are as appropriate for class treatment as this one, as the Plaintiff asserts uniform claims for relief against thousands of ascertained parties over tens of thousands of ascertained violations. The Defendant's own telephone records show that the Defendant engaged in the same course of conduct across the Classes. (Perrong Decl. ¶¶ 14-27.) This Court should certify this class action because Plaintiff's claims involve a core, common contention such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

1.  **The numerosity requirement of Rule 23(a)(1) is satisfied because calling records identify 2,892 class members in the TCPA class and 6,675 in a PTRA class.**

The Court has already determined that Plaintiff satisfied the numerosity requirement on this record. Mem. Op. at 4-5. For completeness: for a proposed class to pass muster under Rule 23(a)(1), the class must be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). And impracticability does not equate to impossibility; the Rule merely requires that, in the absence of a class action, joinder would be "simply difficult or inconvenient." *Russo v. CVS Pharm., Inc.*, 201 F.R.D. 291, 294 (D. Conn. 2001). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that

11

the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Here, Plaintiff's counsel has scrubbed the telephone numbers against the National Do Not Call Registry and run a data analysis to identify those telephone numbers contacted bearing Pennsylvania area codes. Those analyses have identified 2,892 class members in the Do Not Call Registry class, and 6,675 class members in the Pennsylvania Telemarketer Registration Act classes, respectively. (Perrong Decl. ¶¶ 25-26.) It would be impractical to join all those persons to assert such relatively insignificant claims. For these reasons, this case satisfies the numerosity requirement.

2. **The commonality requirement of Rule 23(a)(2) is satisfied because all class members suffered the same injuries—illegal telemarketing or unregistered telemarketing—and have common contentions—that Defendant's calls to their <u>numbers violated the law.</u>**

Because Plaintiff seeks certification under Rule 23(b)(3), "the commonality inquiry is subsumed into the predominance inquiry," *Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015), and the Court has indicated it will address commonality alongside predominance, Mem. Op. at 5. Plaintiff accordingly addresses the full predominance analysis in Part B.3, *infra*, and summarizes the common questions here.

The commonality requirement dictates that the case have "questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). The bar for demonstrating commonality is low and does not require that all class members have perfect identity of questions of law or fact. *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998) (holding that claims based on a common course of conduct will satisfy commonality). Indeed, "even a single common question will do." *Wal-Mart*, 564 U.S. at 359. The Plaintiff must only demonstrate that there is a common question central to

the validity of the class's claims, the "truth or falsity" of the common answers to them will resolve the claims "in one stroke." *Id.* at 350. For the reasons below, this case satisfies the requirement.

Commonality is satisfied here because each Class suffered a common injury. The NDNC class was injured in that Defendant sent text message calls to their numbers on the National Do Not Call Registry without consent. And the PTRA class was injured in that Defendant sent text message calls to their telephone numbers without registering as a telemarketer, as Defendant is required to do under Pennsylvania law. *See Wal-Mart*, 564 U.S. at 349. Each Class's claim depends on a common question capable of classwide resolution: whether the Defendant's conduct of texting telephone numbers on the Do Not Call Registry constitutes a violation of the TCPA, and whether the Defendant's conduct of texting Pennsylvania telephone numbers without registration constitutes a violation of the PTRA and, through it, the UTP/CPL. The answer to each question in each Class will apply to all class members. The Court can resolve this case using common proof, including the SlickText records themselves, the National Do Not Call Registry data against which those records were scrubbed (Perrong Decl. ¶¶ 13, 24-26), Star Power's lack of consent evidence, and Star Power's admissions, including its admission that it does not maintain the FTC Subscription Account Number required to access the Registry at all (Perrong Decl. ¶ 37). The answer will also rely on uniform legal analysis of each statute and the lack of any evidence, after discovery, supporting Defendant's affirmative defenses, of which Defendant has pled none. (ECF No. 11; Perrong Decl. ¶ 33.)

Also capable of classwide resolution will be the related questions of whether Defendant initiated calls without obtaining the requisite prior express written consent, a question that is common precisely because the only records in existence contain no consent data for anyone, and because Star Power's admitted lack of a Subscription Account Number means it could not have

scrubbed any class member's number against the Registry (Perrong Decl. ¶ 37). So too would be the question of whether the Defendant directed calls to be made without having any training, internal do not call policy, or do not call lists as required by law. And, once all this is proven, the Court will be able to determine whether the Plaintiff and other class members are entitled to injunctive relief based on the answers to the aforementioned questions.

There are few cases that pose common questions, the answers to which are as uniform as the one here. In determining whether such conduct is sufficient to impose direct liability for TCPA violations, this Court, and the Jury, need only look to the text messages produced in discovery and Defendant's own lack of any evidence for any affirmative defense and explicit failure to plead the same. And there is no evidence for any potentially individualized issue, including that of consent, that so often poses a barrier to TCPA class certification. *See Hossfeld v. Allstate Ins. Co.*, 726 F. Supp. 3d 852, 873 (N.D. Ill. 2024) (granting summary judgment to plaintiff when defendant adduced no evidence of consent) (rev'd. on other grounds). Moreover, because all the telephone records here originated from the same third-party source, the success and legal sufficiency of the underlying claims is necessarily a common question with common answers.

And beyond sharing the same legal and factual questions, the TCPA is a statute uniquely suited to classwide adjudication. As compared to other causes of action where class actions are routinely certified in consumer protection contexts, TCPA cases involve a singular legal question based on a singular set of records, as here. *See, e.g., Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014) (discussing remarkable commonality of TCPA cases).

3. **The typicality requirement of Rule 23(a)(3) is satisfied because all class members received nearly identical text message calls from Defendant, and no consent defense, unique or otherwise, exists on this closed record.**

Typicality demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). Like commonality, the burden for demonstrating typicality is quite low and merely requires that "the named plaintiffs' individual circumstances are [not] markedly different." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 183 (3d Cir. 2001). Put another way, the "legal theory upon which the claims are based" should not "differ from that upon which the claims of other class members will be based." *Id.* Importantly, typicality does not require that the Plaintiff's claims be identical to other class members, only that they arise from a common, typical course of events and conduct that gives rise to each class member's similar legal arguments to prove the defendant's liability. *Id.* at 184. Indeed, the Third Circuit, like other circuits, has held that typicality tends to merge with the commonality analysis. *Id.* at 186.

Plaintiff, and all class members, received text message calls from Defendant. Each text message was sent advertising an event, for example, a Super Bowl party, an Eagles Victory Party, and a comedy tour. Each member of the DNC class received the text messages to their numbers on the National Do Not Call Registry without consent. And each member of the PTRA class received the text messages to their Pennsylvania cell phone numbers without Defendant registering as a telemarketer under that statute. Therefore, Ms. Garcia and all class members have been harmed through an identical course of conduct, and Ms. Garcia's legal theories are based on the same legal theories of each class. Every class member has the same claims, so by Plaintiff proving her claims, she will prove the class claims. *See Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.*, No. 3:12 CV 2257, 2014 WL 6750690, at *5 (N.D. Ohio Dec. 1, 2014). No individualized inquiry is required.

15

The Court declined to find typicality on the prior record because it could not "determine with the information before it that the question of whether each potential class member consented is not 'a unique defense [that] will play a significant role at trial.'" Mem. Op. at 6 (quoting *Beck v. Maximus, Inc.*, 457 F.3d 291, 300 (3d Cir. 2006)). *Beck* itself supplies the governing standard, and it resolves this case in Plaintiff's favor. Once the plaintiff makes a *prima facie* showing of typicality, as Ms. Garcia has, through the identical messages, identical records, and identical legal theory described above, "[t]o defeat class certification, a defendant must show some degree of likelihood a unique defense will play a significant role at trial." *Beck*, 457 F.3d at 300. A speculative or conclusory invocation of a possible defense is not enough. *Id.* Star Power has made no such showing. It did not even oppose the original motion. And the now-complete discovery record forecloses any such showing.

There is no evidence that Ms. Garcia consented. Star Power never answered Interrogatory No. 6, which asked it to state every fact supporting any consent contention as to her, it produced no documents, and it identified no documents evidencing consent in its initial disclosures. (Perrong Decl. ¶¶ 31-32, 40-41.) Ms. Garcia, for her part, denies under penalty of perjury that she ever consented through any channel. (Garcia Decl.) And Star Power's own responses cut against any consent defense as to her. Its response to Request for Admission No. 3 states she "was swiftly removed from the database upon [her] request." Its pre-suit response to counsel's inquiry, which specifically asked whether Star Power claimed consent, was "Received and understood. It's been removed from StarPower's database," with no claim of consent then or since.

Star Power itself does not know how any class member's number entered its database. Its initial disclosures assert, in the alternative, "that Plaintiff opted in to receive messages or in the alternative a prior owner of the phone number opted-in," two mutually exclusive theories with no

16

date, method, source, or document offered for either. A defendant that cannot say who consented, when, or how, has *not* identified a defense "that is likely to become a major focus of the litigation." *Beck*, 457 F.3d at 301.

The Answer's repeated averment that Plaintiff's number "opted in prior to June of 2024" does not change this analysis, because an unverified pleading is not evidence, and "the requirements set out in Rule 23 are not mere pleading rules." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 316 (3d Cir. 2008). Class certification turns on the evidentiary record after a "rigorous analysis," *id.* at 316-17, and the evidentiary record contains no consent evidence at all, as to Ms. Garcia or anyone. A defense that exists only as an unsworn averment, unsupported by a single answered interrogatory, produced document, or disclosed witness after the close of discovery, cannot "play a significant role at trial." *Beck*, 457 F.3d at 300.

Nor is any consent issue "unique" to Ms. Garcia in any event, which is the dispositive point under Rule 23(a)(3). The Court observed that Plaintiff had not "submit[ted] that Defendant does not have a mechanism by which individuals can consent to receiving text messages," thus mooting the consent defense. Mem. Op. at 6. Plaintiff now makes precisely that showing, with record support: the only records of the campaign adduced in discovery, those of Star Power's own texting vendor, contain no evidence of consent for any recipient. Star Power identified no consent mechanism, policy, or procedure in discovery and produced no documents describing one, and the do-not-call "policy" it claimed was "accessible online" has never been produced. Because the same empty, uniform record applies to Ms. Garcia and to every class member alike, whatever consent question exists is identical for the entire class, the opposite of a defense unique to the representative. *See Hossfeld*, 726 F. Supp. 3d at 873; *Berman v. Freedom Fin. Network, LLC*, 400 F. Supp. 3d 964, 974-75 (N.D. Cal. 2019); *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d

17

1036, 1042 (9th Cir. 2012); *Zyburo v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014). The fact that the text messages at issue here were all sent from the Defendant's account with SlickText, as proven through SlickText's records, is a common business practice dictated by the Defendant that further establishes typicality. For the foregoing reasons, this case satisfies the typicality requirement.

> **4. The adequacy requirement of Rule 23(a)(4) is satisfied because Ms. Garcia is an ideal TCPA class representative and TCPA-experienced counsel represents her.**

The adequacy requirement necessitates a two-part analysis. First, the Plaintiff must demonstrate that she can represent the class "fairly and adequately" and protect its interests. FED. R. CIV. P. 23(a)(4). Additionally, the Plaintiff must also demonstrate that her chosen counsel will do the same. With respect to both herself and counsel, Plaintiff must demonstrate that they are credible and have adequate knowledge of and activity in the case. *Baffa v. Donaldson, Lufkin, & Jennette Secs. Corp.*, 222 F.3d 52, 61-62 (2d Cir. 2000). Additionally, the Plaintiff must also demonstrate that neither she nor counsel have a conflict of interest between herself and class members. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Plaintiff is your typical adequate class representative. She is an ordinary, well-meaning consumer who is fed up with the text message calls at issue. And although she has no formal legal training or experience, she is familiar with the nature of the litigation, the claims at issue, and what is required of her as a class representative. *See* Exhibit 2, Declaration of Weiharik Garcia. The Court indicated that, upon the filing of a signed declaration, it "sees no issue with Plaintiff's adequacy as class representative." Mem. Op. at 7. Ms. Garcia in fact executed her declaration this time around. Due to a clerical error in counsel's office, the unsigned draft was attached to the original motion in place of the executed version. Ms. Garcia's new, revised, signed declaration

executed in July 2026, is filed herewith. There is no doubt that Ms. Garcia can and will adequately represent this class.

In addition to representing Ms. Garcia in this matter, Mr. Perrong also represented the class in *Aley v. LightFire Partners, LLC*, No. 5:22-cv-00330 (N.D.N.Y.), a certified TCPA class action, including on an unsuccessful interlocutory appeal taken by the defendant in that case. 2024 WL 4007345; No. 24-2539 (2d Cir. Jan. 8, 2025) (denying interlocutory review). Mr. Perrong was also appointed class counsel in *Ryan v. Wilshire Law Firm, P.L.C.*, No. 2025-022621-CA-01 (Fla. 11th Jud. Cir.), a certified class action granted final approval on May 28, 2026, and his appointment as class counsel is pending in *Bond v. Folsom Insurance Agency LLC*, No. 3:24-cv-02551-L (N.D. Tex.). (Perrong Decl. ¶¶ 6-8.) Mr. Perrong has further been co-counsel for other class actions that have been certified and settled. Mr. Perrong has the necessary expertise in class action litigation to represent the Class. (Perrong Decl. ¶¶ 2-10.) Thus, adequacy is satisfied.

**B. This case satisfies the requirements of Rule 23(b).**

Of course, in addition to satisfying the requirements of Rule 23(a), the Plaintiff must also demonstrate that she has satisfied the requirements of at least one of the three subsections of Rule 23(b). Here, class certification is appropriate under Rule 23(b)(2) and (3); under Rule 23(b)(2) because the Defendant has failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." FED. R. CIV. P. 23(b)(2), and under Rule 23(b)(3), because common questions of law or fact "predomin[ate]" and because the class action mechanism is "superior" to the other available methods to adjudicate the controversy.

**1. Plaintiff seeks certification under Rule 23(b)(3) and, concurrently, a hybrid certification under Rule 23(b)(2) limited to injunctive and declaratory relief.**

The Court asked Plaintiff to clarify whether certification under Rule 23(b)(2) and (b)(3) is sought "concurrently or alternatively." Mem. Op. at 8. The answer is concurrently, in the hybrid form this Court's opinion itself identified: "[a] hybrid class action can refer to a single case where a plaintiff seeks both injunctive and monetary damages through certification under more than one section of Rule 23." Mem. Op. at 8-9 (*citing Wendell H. Stone Co. v. Five Star Advert., LLC*, No. 19-cv-03157, 2021 WL 1080398, at *6 (D. Colo. Mar. 17, 2021)). Specifically, Plaintiff asks the Court to certify each Class under Rule 23(b)(3) for the classwide statutory damages claims, and concurrently to certify the same Classes under Rule 23(b)(2) solely with respect to the classwide injunctive and declaratory relief described in Part B.5, *infra*.

This structure honors, rather than evades, *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011). Plaintiff does *not* contend that statutory damages are "incidental" to the injunctive relief, and does not seek to recover any monetary relief for the class through the Rule 23(b)(2) class. All monetary relief will flow exclusively through the Rule 23(b)(3) class, with the notice and opt-out rights that Rule 23(c)(2)(B) guarantees, while the (b)(2) certification supplies the indivisible, classwide injunction that the statutes expressly authorize. That is precisely the allocation *Dukes* prescribes, where claims for individualized monetary relief "belong in" Rule 23(b)(3), where the absent members' due process protections attach. 564 U.S. at 362-63.

So understood, the two decisions the Court cited do not stand in the way, and each addresses a materially different request. In *Jackson*, the plaintiff moved to certify a single National Do Not Call Registry class under Rule 23(b)(2) *alone*. The holding follows directly from that posture. Because the complaint sought  and pled statutory damages that were "not incidental to the requested injunctive relief," and because no Rule 23(b)(3) vehicle had been offered at certification, certifying under Rule 23(b)(2) "would be improper." 2024 WL 2701695, at *5. *Jackson* thus holds

that a damages case cannot be shoehorned into Rule 23(b)(2) *by itself*. It says nothing against a motion that does what Plaintiff does here, place the damages in Rule 23(b)(3), where *Dukes* says they belong, and reserve Rule 23(b)(2) for the injunctive relief alone.

And the concern voiced in *Morales* was that the plaintiffs there did not address case authority declining to certify a Rule 23(b)(2) class that is proposed alongside separate damages classes if the primary intent underlying the action is to recover damages. Plaintiff addresses that authority directly. The concern animating it is that a Rule 23(b)(2) class may be used to bind absent members to a monetary judgment without notice or an opportunity to opt out. *See Dukes*, 564 U.S. at 362-63. That concern is absent here by design, since Plaintiff concurrently seeks certification through Rule 23(b)(3), and every class member will receive Rule 23(c)(2)(B) notice and an unqualified right to exclude herself before any judgment binds them. The Rule 23(b)(2) certification Plaintiff requests would enlarge no member's exposure and diminish no member's rights; it would do only what Rule 23(b)(2) exists to do, authorize a single, indivisible order directing Star Power to stop. And the need for that order is not merely hypothetical, since Star Power holds no Subscription Account Number, cannot (and does not) scrub against the Registry, and remains unregistered in Pennsylvania. A damages judgment alone would leave every one of those conditions intact.

2. **Both Classes are ascertainable because membership is determined from objective fields in the SlickText records, cross-referenced against the National Do Not Call Registry.**

A Rule 23(b)(3) class must be "currently and readily ascertainable based on objective criteria." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012); Mem. Op. at 9. The inquiry has two elements: "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class

21

members fall within the class definition." *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015) (cleaned up). Ascertainability does not require the identification of every class member at certification. It requires only that membership be capable of determination without "extensive and individualized fact-finding or 'mini-trials.'" *Id.*; *see also City Select Auto Sales Inc. v. BMW Bank of N. Am. Inc.*, 867 F.3d 434, 440-41 (3d Cir. 2017) (records plus affidavits can satisfy ascertainability).

Both elements are satisfied here and the classes have already been ascertained. Every criterion in each class definition maps onto an objective data source. Membership in the National DNC Class is determined by the telephone number in the "to" field of the SlickText records, that number's registration on the National Do Not Call Registry, drawn from the Registry's own data, to which Plaintiff's counsel maintains subscription access, the count of messages to that number within any 12-month period, drawn from the "sent" field, and the date of each message, drawn from the same field. Membership in the PTRA Class is determined by the area code of the number in the "to" field and the date in the "sent" field, measured against the fact that Star Power was not registered as a telemarketer with the Pennsylvania Office of Attorney General. No subjective criterion appears anywhere in either definition, and no memory-dependent, self-identifying showing is required of any class member.

The mechanism is not merely feasible, it has been executed. Counsel cross-referenced every number in the SlickText production against the Registry and against Pennsylvania area codes using SPSS, identifying 2,892 DNC Class members and 6,675 PTRA Class members. (Perrong Decl. ¶¶ 11-27.) Names and email or mailing addresses for notice can be obtained through standard reverse-lookup databases and carrier records keyed to the telephone numbers, the very approach approved in *Krakauer*, where class members were identified "through a straightforward review of

22

the [dialing] records" and standard lookup processes. *See Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019); *see also City Select*, 867 F.3d at 441. Because membership turns entirely on Defendant's vendor's own records and public registry data, both Classes are "currently and readily ascertainable." *Marcus*, 687 F.3d at 593.

### 3. Both common legal and factual questions predominate over the litigation because there is uniform proof for uniform calling conduct to the Class, and because consent, the only individualized issue the Court identified, is an affirmative defense on which Star Power bears the burden and has no evidence, satisfying the first part of Rule 23(b)(3).

This simple, straightforward case is the touchstone for satisfying the predominance requirement because the "proposed class [is] sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623-24. The purpose of the predominance requirement is to ensure that the proposed class is "sufficiently cohesive to warrant adjudication by representation." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 310 (3d Cir. 2008), as amended (Jan. 16, 2009). The analysis "entails (a) first examining each element of the plaintiff's legal claim to see if it involves common issues of law or fact and then (b) determining whether issues common to the class overwhelm issues subject to individualized proof." *Williams v. Pisa Grp., Inc.*, No. 18-cv-4752, 2023 WL 2227697, at *11 (E.D. Pa. Feb. 24, 2023); *see* Mem. Op. at 10.

Every element of Plaintiff's affirmative case is subject to common proof, drawn from a single, uniform set of records. First, whether Star Power contacted the Plaintiff and other class members who listed their numbers on the DNC Registry is subject to common proof in the form of Star Power's own calling records as well as records of the DNC Registry, as have already been examined. Second, whether the other statutory prerequisites to this claim, such as the one that the "individual receive more than one telephone call within any 12-month period," are likewise proved by those same calling records. 47 U.S.C. § 227(c)(5). Third, the Pennsylvania Telemarketer

23

Registration Act claims are similarly subject to classwide, uniform proof of whether Defendant was appropriately registered, and it has admitted that it was not. This Court need not conduct individualized damage assessments because all class members are seeking the same measure of statutory damages. Courts routinely certify class actions in cases, such as this one, where all major issues can "be shown through aggregate records," thus eliminating the need for "individual fact-finding." *E.g.*, *Krakauer*, 925 F.3d at 658.

That leaves consent, the issue on which the Court concluded the prior record fell short. Plaintiff rectifies that issue here with record evidence. *First*, the burden on consent is Star Power's, and the governing standard is demanding. Lack of consent is not an element of Plaintiff's claim; consent is an affirmative defense on which the defendant bears the burden of proof. *KHS Corp*, 376 F. Supp. 3d at 528; *Van Patten*, 847 F.3d at 1044; *Smith*, 2021 WL 141336, at *4.

And not just any consent will do. The regulation requires "a signed, written agreement between the consumer and seller which states that the consumer agrees to be contacted by this seller and includes the telephone number to which the calls may be placed." 47 C.F.R. § 64.1200(c)(2)(ii). Star Power was therefore obligated, if it wished to litigate consent, to come forward with signed, written, seller-specific consent records. It has come forward with nothing. Saying one has consent is not the same as proving it, and a defendant cannot carry an evidentiary burden with an unverified pleading. *See Hydrogen Peroxide*, 552 F.3d at 316.

*Second*, a defendant's speculation that consent evidence *might* exist cannot defeat predominance. The leading appellate authority on this point is *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119 (6th Cir. 2016). There, the district court denied certification based on "the mere mention of a defense" of individualized consent, and the Sixth Circuit reversed, holding it an abuse of discretion to allow "speculation and surmise" about possible consent "to tip

24

the decisional scales" where the defendant failed to produce any evidence of consent. *Id.* at 1125-26. That is this case exactly, with one difference. In *Top Flite* discovery was ongoing, so there was still the possibility that consent might become a defense, whereas here discovery has closed and the record is final. If an unsubstantiated possibility of consent could not defeat predominance there, it certainly cannot here, where no further evidence can lawfully enter the case. *See also Hossfeld*, 726 F. Supp. 3d at 873 (granting plaintiff summary judgment on consent where defendant adduced no *admissible* consent evidence).

The question at class certification is *not* whether one can *imagine* potential evidence of consent. It is whether the issues that will actually be tried are common. *Amgen*, 568 U.S. at 459 (predominance requires that common questions predominate, "not that those questions will be answered, on the merits, in favor of the class"). Here, on this record, even the consent issue is common: it will be resolved for every class member, in one stroke, on the same classwide showing, Star Power's failure to carry its burden.

*Third*, the structure of the records independently makes consent a common issue rather than an individualized one, which distinguishes the authority on which the Court relied. In *Steven A. Conner*, the defendant *had* consent evidence, and the record showed fax numbers gathered from varied sources, such that "to determine the type of consent each individual class member did or did not provide Defendant, assuming any was given at all, would require individualized review." 2022 WL 4080761, at *6 (E.D. Pa. Sept. 6, 2022). Here, there is nothing to individually review. The only records of the campaign from SlickText contain six fields, "to," "from," "body," "media," "sent," "delivered," and no consent-related data for any recipient. SlickText produced no opt-in records and Star Power identified and produced none of its own. An "individualized review" of consent presupposes individualized consent records that could vary member to member. Where

the uniform evidence shows that no such records exist anywhere, the consent inquiry is the same for every member and is resolved by the same proof. *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (common questions are those "where the same evidence will suffice for each member") (cleaned up).

For the same reason, *Shamblin* is inapposite. Plaintiff does not ask for "a presumption that all class members failed to consent." She points to affirmative, classwide evidence, including the lack of any consent evidence in the only evidence actually adduced in discovery, Star Power's failure to produce consent records, and Star Power's admission that it does not maintain the Subscription Account Number required even to access the Registry. As such, the purported defense of consent is unavailable as to every class member for the same reason. The Court recognized "the difficulty of proving a negative." Mem. Op. at 11. Plaintiff has proven it the only way a negative can be proven: by exhausting the universe of records that could contain the affirmative and demonstrating that it is empty, and by identifying the legal rule that places the consequence of that empty record on the party with the burden.

Fourth, with discovery closed, Star Power is barred from filling the void at trial. This is where the burden of proof and the discovery record converge. At trial, a defendant asserting consent stands in the same position as any party bearing the burden on an issue for which they bear the burden of proof, "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 317 (1986). A party that develops no facts in discovery on an issue it must prove cannot carry that issue to a jury.

And the Federal Rules themselves supply the preclusion. A party that fails to identify documents in its initial disclosures under Rule 26(a)(1)(A)(ii), or to supplement under Rule 26(e), "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a

26

trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Star Power identified no consent documents, answered no interrogatories, and produced nothing. Whatever consent evidence one might hypothesize, Star Power would be precluded from introducing it. Certification cannot be denied on the strength of hypothetical individualized evidence that does not exist in the record and that the proponent would be barred from offering.

Star Power's requests for admission responses reinforce the same conclusion, though the Court need not reach them to certify. Because the responses were served twenty-seven days late with no extension sought or granted, each matter is "admitted" by operation of law, Fed. R. Civ. P. 36(a)(3), and "conclusively established" absent a Rule 36(b) motion that Star Power has never made. Those deemed admissions include Request No. 2, that Star Power "did not have Plaintiff's consent to place the call complained of," and Requests Nos. 8 and 9, that it has no internal do-not-call list or policy. But even if the Court declines to give the untimely responses deemed-admitted effect at this stage, the outcome is unchanged. Request No. 12, the admission that Star Power maintains no FTC Subscription Account Number, was *admitted outright*, in Star Power's own words, timely or not.

A final word on motion practice. The Court observed that if the problem were Star Power's wholesale failure to respond to discovery, "Plaintiff should have engaged in motion practice to compel Defendant's participation in discovery." Mem. Op. at 11. Plaintiff respectfully submits that no motion to compel was required here, for a reason specific to the posture of this issue. The unanswered discovery sought evidence of *Star Power's affirmative defense*, not evidence Plaintiff needs for her *prima facie* case. Plaintiff's case is complete on the SlickText records she obtained herself through third-party discovery and Registry data. Rule 37 motion practice exists to force production of evidence the *movant* needs; it does not oblige a plaintiff to compel her adversary to

prove the adversary's own defense. Star Power's failure to participate in discovery leaves no evidentiary basis for individualized consent inquiries. Plaintiff therefore requests that the Court treat the RFAs as admitted and preclude reliance on undisclosed consent evidence. Alternatively, to the extent an evidentiary weighing is required, that will be properly decided by a jury, rather than deny certification based on evidence Star Power never disclosed.

Star Power alone bore the burden and the incentive to develop consent evidence, and its choice not to participate in discovery is itself the classwide answer. The Rules attach the consequences automatically, deemed admissions under Rule 36(a)(3), and exclusion under Rule 37(c)(1), without any motion by Plaintiff. Star Power should not be better positioned at class certification because it ignored discovery than it would have been had it responded and confirmed, as its vendor's records already show, that no consent evidence exists.

Here, the common, "aggregation-enabling issues in the case," such as the lists of persons called, whether they were on the DNC, and whether the TCPA's other statutory prerequisites are satisfied, are more prevalent than "non-common aggregation-defeating individual issues," of which none exist on this closed record. *Tyson Foods*, 577 U.S. at 453. Not only that, Defendant has pled *no* affirmative defenses in its Answer, and thus has waived them. FED R. CIV. P. 8(c); *Charpentier v. Godsil*, 937 F.2d 859, 863 (3d Cir. 1991) (holding that failure to assert an affirmative defense results in its waiver). Given that Defendant has adduced no affirmative defenses, the only issues here are those of the affirmative class case, and those questions can be answered on a class basis.

There exists uniform calling conduct and a uniform set of data that all class members can use to make a *prima facie* showing of their TCPA and PTRA claims. Furthermore, as outlined above, these factual commonalities are uniquely subject to classwide analysis and adjudication.

28

Courts routinely certify TCPA and other consumer claims because the same calling conduct applies to the class and the class can prove those claims through objective evidence on a classwide basis. *See, e.g., Krakauer*, 311 F.R.D. at 394-95 (certifying a TCPA case and noting that common questions in TCPA class action relating to calls made to consumers on the Do-Not-Call Registry predominates over individual questions), *aff'd*, 925 F.3d at 655-57 (affirming certification and noting that the many common questions of law and issues of fact predominate over individual issues); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 491 (N.D. Ill. 2015) (holding predominance was satisfied); *Wilkes v. CareSource Mgmt. Grp. Co.*, No. 4:16-CV-038 JD, 2016 WL 7179298, at *7 (N.D. Ind. Dec. 9, 2016) (holding that predominance was satisfied when data was obtained in a uniform, common manner).

In sum, the trial of this case will consist of common proof from beginning to end: the SlickText records, the Registry data, the message content, Star Power's registration status, and Star Power's admitted lack of a Subscription Account Number. The one issue the Court identified as potentially individualized, consent, presents no evidence for a jury to weigh as to any class member, is governed by a burden that rests on Star Power, is barred from late-blooming proof by Rule 37(c)(1), and in all events would be resolved on the same classwide record for every member. The predominance requirement is satisfied.

### 4. A class action is clearly the "superior" method of adjudicating claims under the <u>TCPA.</u>

The Court deferred its superiority analysis pending further information on commonality, typicality, and predominance. Mem. Op. at 11. With those showings now made, superiority follows readily. The four factors of the superiority requirement set forth in Rule 23(b)(3), which requires that the class action mechanism be "superior" to other available methods to adjudicate the controversy, are also satisfied. The guiding policy behind the class action mechanism is to

29

overcome problems posed by the miniscule incentive that small recoveries pose. *Amchem*, 521 U.S. at 616. This case is the touchstone for why a class action is superior to individual actions.

*First*, if this Court denied certification, few members of each Class would have an interest in bringing an individual claim against Defendant seeking to recover a relatively miniscule amount of between $500 and $1,500 per call for the TCPA claims and of between $100 and $300 for the PTRA claims, and likely do not have the necessary legal resources to do so, particularly when considering the niche area of law that this case presents. The TCPA has no attorney fee hook. Star Power contacted many Class members who did not know anything about their TCPA rights, let alone how to begin enforcing them. Even fewer individuals would pay $405 to file this case, only to potentially recover $500. *See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386 (2012). As a result, the class action mechanism is clearly superior to individual litigation, thus satisfying superiority. *See* William B. Rubenstein, 2 *Newberg on Class Actions* § 4:87 (5th ed.) (noting superiority requirement is met in class actions involving small claims because "[i]n such cases, there will either be a class action or there will be no litigation").

*Second*, Plaintiff is not aware of any other such actions against Defendant alleging TCPA violations. The Plaintiff so far is the first and only individual to hold Star Power accountable for its unlawful telemarketing conduct through the filing of a lawsuit. *Third*, class treatment will conserve judicial resources here in the Eastern District of Pennsylvania, will promote consistency, and will efficiently adjudicate the dispute, as opposed to the alternative of hundreds of individual cases filed by individuals or informally demanding TCPA and PTRA damages from the Defendant, which the Defendant has refused to satisfy. Therefore, adjudicating these claims here would provide flexibility, consistency, and control not available with individual litigation. *Krakauer*, 311 F.R.D. at 400.

*Finally*, consumer class litigation involving such straightforward claims is easily manageable, even at trial, and would only be litigated a single time, as this Court has done many times before. As in other TCPA and related state law cases, the Plaintiff can and has proved the TCPA and state law violations alleged here through her counsel's analysis of the calling records from SlickText. Because the sole potentially individualized issue, consent, will be resolved on a common record for the reasons stated above, trial will be short, and the class list, drawn from the "to" field of the records, supplies a ready mechanism for notice and distribution. Additional evidence will only involve a handful of witnesses with knowledge as to Star Power's marketing conduct and practices.

The class action mechanism effectuates the important social and cultural goals underlying the TCPA. The statute was designed from the ground-up to create a simple scheme for determining violations, adjudicating a limited number of defenses, and making victims whole using statutory damages. *Krakauer*, 925 F.3d at 659. The Fourth Circuit observed that "the advantages of class resolution follow directly from the statute," which "creates a simple scheme" for resolving the problem of "repeated and unwanted telemarketing calls." *Id.* at 659, 663. Congress prescribed strong medicine for a serious disease. This resounding endorsement of TCPA class actions leaves no room for doubt as to the fact that this case must be certified and that the class action mechanism is superior.

### 5. This case satisfies the requirements of Rule 23(b)(2) for the concurrent, injunctive-relief-only hybrid certification described above.

Rule 23(b)(2) requires a plaintiff to show that the party opposing certification has acted or failed to act on grounds generally applicable to the class as a whole, "so that final injunctive relief or corresponding declaratory relief is appropriate . . . ." Fed. R. Civ. P. 23(b)(2). That inquiry is separate from the one used to decide certification under Rule 23(b)(3), which asks whether

common questions "predominate" over questions affecting only individual members and whether the class mechanism is "superior" to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). Because the two subsections ask different questions and supply different remedies, a single class may satisfy both, and the showing made in Part B.3 as to predominance does not displace the separate showing made here.

"[T]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory remedy warranted.'" *Wal-Mart*, 564 U.S. at 360. Here, class certification is appropriate under Rule 23(b)(2) because, in failing to scrub numbers against the Do Not Call list, and failing to register as a telemarketer as required by law, Defendant violated two separate statutes which expressly provide for injunctive relief, which require Defendant (1) to scrub numbers against the Do Not Call Registry and (2) to register as a telemarketer as required under Pennsylvania law. Plaintiff and the Classes are further entitled to declaratory relief holding that violations of the same statutes occurred. The Defendant also failed to act on grounds generally applicable to the class, as described, such that final injunctive relief is warranted. The injunctive relief sought is indivisible in exactly the sense *Wal-Mart* requires: an order requiring Star Power to obtain a Subscription Account Number, scrub against the Registry, adopt a do not call policy, and register in Pennsylvania can be enjoyed by the class as a whole and does not require individualized determinations. *See Wal-Mart*, 564 U.S. at 360, 366.

Of note, the TCPA specifically provides for injunctive relief. 47 U.S.C. § 227(b)(3), (c)(5). The TCPA caselaw is rife with examples of courts certifying Rule 23(b)(2) classes for injunctive relief. For example, in *Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1042 (9th Cir. 2012), the Ninth Circuit upheld certification of a Rule 23(b)(2) class in granting a *preliminary* injunction in prohibiting a debt collector's use of an illegal automatic dialer. Similarly, in *West v.*

*California Servs. Bureau, Inc.*, 323 F.R.D. 295, 299 (N.D. Cal. 2017), the court granted an injunctive relief class to enjoin defendant from calling wrong numbers using specified equipment. And in *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 649 (W.D. Wash. 2007), the district court certified a 23(b)(2) class, despite the defendant's promise that "it will not send unsolicited facsimiles again." The *Kavu* Court flatly rejected this argument, reasoning that the defendant "did not make that promise before plaintiff filed this lawsuit, and plaintiff is not required to take defendant at its word." *Id.* Pennsylvania's Unfair Trade Practices and Consumer Protection Law, which the Telemarketer Registration Act expressly makes violations of the same actionable thereunder, similarly provides for injunctive relief. 73 PA. CONS. STAT. § 201-9.2.

An injunction directing Star Power to stop texting Ms. Garcia would not remedy the broad classwide harm at issue. Nothing in an individual injunction would require Star Power to obtain a Subscription Account Number, to scrub the Registry before its next campaign, or to register in Pennsylvania, which is why the relief must run to the class as a whole. Further citations abound demonstrating the particular appropriateness of Rule 23(b)(2) certification in cases like these, where the Defendant continues a course of TCPA violative conduct. In *Wendell H. Stone Co. v. Five Star Advert., LLC*, the District of Colorado explained:

> In this case, certification is necessary because there is no assurance that an injunction against defendants preventing them from faxing Wendell Stone Company would prevent defendants from sending unsolicited faxes to other companies or persons. While the injunctive relief sought is quite close to an impermissible injunction to obey the law, 47 U.S.C. § 227(b)(3) creates a private right of action to bring an action to enjoin a violation of the TCPA. 47 U.S.C. § 227(b)(3)(A). . . . The Court finds that the class is sufficiently cohesive for a classwide injunctive relief and tailoring to each class member is unnecessary. Accordingly, the Court finds that certification under Rule 23(b)(2) is appropriate.

No. 19-cv-03157-PAB-STV, 2021 U.S. Dist. LEXIS 50721, at *15-18 (D. Colo. Mar. 17, 2021) (cleaned up); *see also Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:10-cv-1777 AJB

(NLS), 2012 U.S. Dist. LEXIS 125390, at *17-18 (S.D. Cal. Aug. 27, 2012) ("The undersigned finds that preliminary certification of the class under Rule 23(b)(2) is proper for at least 2 reasons. First, the TCPA provides injunctive relief and Plaintiff seeks injunctive relief in his complaint. Second, the agreed-upon injunctive relief will redress an alleged group-wide injury, i.e., additional training and implementation of new policies.")

Here, injunctive relief, which would include, among other relief, (1) ordering Defendant to take measures to avoid calling numbers on the Do Not Call Registry without consent, including obtaining a Subscription Account Number and scrubbing against the Registry, (2) establishing an internal do not call list, and establishing an internal do not call policy, (3) registering as telemarketers under Pennsylvania state law, and (4) requiring Defendant to maintain compliance counsel and a telemarketing compliance company as a condition of their continued ability to place telemarketing calls, are all necessary to address the broad, classwide injury that the class has experienced and continues to experience, despite this lawsuit.

This federal class action did not put an end to each class member's injuries, who continue to suffer damages so long as Defendant continues to send text messages to numbers on the Do Not Call Registry without consent and without registering as a telemarketer under Pennsylvania law. A court order certifying the class and eventually awarding injunctive relief is the only way to bring the Defendant into compliance with the TCPA and PTRA. And such measures would ultimately broadly benefit the class and general public, rendering certification under Rule 23(b)(2) appropriate.

## C. The PTRA/UTP-CPL Class should be certified now or, in the alternative, upon resolution of the show-cause briefing.

The Court ordered supplemental briefing on whether the PTRA count should be dismissed, and stated that, to the extent the claim survives, it "will entertain a renewed motion for class

certification for the PTRA cause of action at a later time." Mem. Op. at 12-13. Plaintiff filed her show cause response on July 10, 2026 (ECF No. 21), explaining that the private remedy runs through the UTP/CPL: the PTRA deems every violation of the Act a violation of the UTP/CPL, 73 PA. CONS. STAT. § 2246, expressly preserves consumers' remedies, *id.* § 2247, and the UTP/CPL supplies the private right of action to purchasers of goods or services for personal, family, or household purposes who suffer an ascertainable loss, 73 PA. CONS. STAT. § 201-9.2(a), elements the Complaint pleads expressly. Compl. ¶¶ 15-18, 35, 53; Prayer ¶ F. Plaintiff incorporates that response by reference rather than repeating it here.

Should the PTRA/UTP-CPL count survive, its class questions are, if anything, more uniform than the TCPA Class's. The central liability question, whether Star Power acted as an unregistered "telemarketer" when it sent the messages, is a single question with a single answer for all 6,675 class members, and Star Power has admitted that it is not registered with the Pennsylvania Office of Attorney General. Membership in that class is ascertained from the area codes and timestamps in the same SlickText records. And the § 201-9.2(a) elements are common in character, each class member, as a subscriber receiving text messages on a telephone, purchases telephone service and equipment for personal use, as evidenced through the nature of the messages they received as regarding personal entertainment, and each message consumed the very service and property purchased, the same theory of ascertainable loss set out in ECF No. 21 at 6-9. Statutory damages of $100 per violation present no individualized damages issues. Plaintiff accordingly requests certification of the PTRA/UTP-CPL Class together with the DNC Class. In the alternative, and consistent with the Court's stated approach, Plaintiff requests certification of the National DNC Class now and leave to renew as to the PTRA/UTP-CPL Class within fourteen days of the Court's resolution of the show cause briefing, on the record already before the Court.

## **CONCLUSION**

Because the Plaintiff has satisfied Rule 23's admittedly deferential requirements, Plaintiff respectfully requests that this Court (1) certify the proposed Classes under Rule 23(b)(3) and, concurrently, under Rule 23(b)(2) as to injunctive and declaratory relief only, (2) appoint Ms. Garcia to serve as the Class Representative, and (3) appoint Perrong Law LLC as Class Counsel under Rule 23(g).

Dated: July 24, 2026

> */s/ Andrew Roman Perrong*
> Andrew Roman Perrong, Esq.
> Perrong Law LLC
> 1669 Edgewood Road, Suite 218
> Yardley, PA 19067
> Phone: 215-225-5529 (CALL-LAW)
> Facsimile: 888-329-0305
> a@perronglaw.com

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

July 24, 2026

*/s/ Andrew Roman Perrong*
Andrew Roman Perrong, Esq.